**TOWN OF NEW ROSS, Appellant–Defendant and Counter-claimant,**

v.

**Scott FERRETTI, d/b/a Ferretti Construction, Appellee–Plaintiff and Counter-claim.**

No. 54A04–0310–CV–515.

Court of Appeals of Indiana.

Sept. 22, 2004.

Cy Gerde, George L. Hanna, Hanna, Gerde & Russell, Lafayette, IN, Attorneys for Appellant.

Gregory H. Miller, Crawfordsville, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

The Town of New Ross appeals the $57,393.57 judgment that the trial court

entered in favor of Scott Ferretti d/b/a Ferretti Construction based upon the theories of breach of contract and unjust enrichment. Ferretti cross-appeals, contending that the trial court should have awarded him pre-judgment interest. Because the public work contract between the parties included the costs of implementing a storm water drain plan, we conclude that the Town of New Ross must pay Ferretti for those costs and pre-judgment interest for those damages. In addition, because of the dearth of evidence regarding whether any of the changes Ferretti made to the project were mandated by state law, we remand for such a determination. In the event that any of the changes were mandated by state law, we conclude that Ferretti must be compensated for them as well. However, we conclude that the trial court erred in awarding damages to Ferretti for the remaining changes he made to the project that were not memorialized in writing because to do so would violate public policy. We therefore affirm in part, reverse in part, and remand in part.

### Facts and Procedural History

In the spring of 2000, the Town of New Ross ("the Town"), which is a town in Montgomery County consisting of approximately 400 people, advertised a notice in a local newspaper that it was accepting bids for construction of the Walnut Township Volunteer Fire Department. Between tax dollars and grant money, the Town raised approximately $300,000.00 for the construction of the fire station. The Town put together a bid package for the project, which contained specifications for the fire station. However, the bid package did not contain State-approved blueprints of the

fire station; rather, it contained drawings that were prepared by the fire department's Building Committee, which "was established to represent the [three-member] Town Board and to act as a liaison between the Town and [its] chosen general contractor[.]" Tr. p. 278.

On April 11, 2000, Scott Ferretti, who is a general contractor doing business as Ferretti Construction, submitted a bid of $266,675.00. The following paragraph was included as part of Ferretti's bid:

Without State approved plans there are several items that may be of concern after state plans have been drawn. We would like to bring this to your attention at this time, as ... state codes and requirements may force us to abide per plans. Thus, changing proposal costs in these or such areas, all costs and proposals are pending state approval.

Appellee's App. p. 43.

At the April 13, 2000, regular meeting of the Town Board, bids for the fire station project were opened. There were two bids for the project, of which Ferretti's was the lowest, and the Town Board took the bids under advisement. Two weeks later, the Town Board conducted a special meeting with Ferretti to discuss the project. At this meeting, Ferretti reiterated his concern that there were no State-approved plans for the fire station. Ferretti also advised the Town Board that a drainage plan had to be adopted.

The Town Board later accepted Ferretti's bid. On June 27, 2000, the Town and Ferretti entered into a Cumulative Agreement for Public Works ("the Agreement"), which totaled $273,325.00.[1] The Agreement specifically referred to and incorpo-

---

1. This figure is $6650.00 higher than Ferretti's bid because the parties agreed to add some additional features to the fire station that were not included in Ferretti's bid, such as brick veneer on the exterior of the building, a well system, and twenty-five year shingles. *See* Appellee's App. p. 8, 9, 10.

rated Ferretti's bid, which provided that Ferretti would be compensated for the additional costs of complying with "state approved plans" and "state codes and requirements." Appellee's App. p. 43. The Agreement also provided that additional changes to the cost of project must be made "in writing." Appellee's App. p. 8, 9, 10.

Thereafter, the Town hired Michael Whitecotton, a licensed architect, to prepare plans of the fire station for State approval. After accepting the plans, the Town forwarded them to the State for approval. However, the State returned the plans without approval and advised that before it could approve the plans, a survey had to be performed and a storm water drain plan had to be implemented. In response, the Town hired Deckard Engineering to perform the survey and to design the storm water drain plan. The Town Board also authorized Ferretti to negotiate a drainage easement with The Farmers State Bank. In order for the storm water drain plan to be approved, it was necessary to connect the fire station to the town storm water drain system, which required trenching through the bank's parking lot. The Town and The Farmers State Bank subsequently executed a drainage easement.

Construction on the fire station began in January 2001, and the fire station was completed in June 2001. As the project proceeded, Ferretti made several changes to the original plans for the fire station. The major change involved implementing the storm water drain plan, which the State required before it would approve the plans. Ferretti alleged that the other changes were either required by State law, such as installing showers and grab bars that complied with the ADA and draft stops in the truss assembly, or requested by members of the fire department's

Building Committee, such as installing a cafeteria door and extra cabinetry in the kitchen, a second 200–amp electrical service for fish fries, and wainscoting on the exterior of the building. After the project was completed and Ferretti received $273,325.00 as provided for in the Agreement, Ferretti submitted an itemized list of the additional work he did on the fire station to the Town Board. See Appellee's App. p. 13–16. The cost of the changes to the project totaled $57,393.57, of which the storm water drain plan accounted for $20,142.54. Because members of the Building Committee, who asked Ferretti to make the changes, were not authorized to make any changes to the fire station or to spend any money without approval from the Town Board and because the changes Ferretti made to the fire station were not specifically set forth in any written document or "change order," the Town refused to pay Ferretti $57,393.57.

In December 2001, Ferretti filed a complaint against the Town for $57,393.57. The complaint alleged breach of contract and unjust enrichment. Following a bench trial, the trial court issued findings of fact and conclusions of law. Specifically, the trial court made the following conclusions of law:

1. Specifications for public works projects may be altered or changed as necessary pursuant to I.C. 36–1–12–18. There were no change orders executed by the parties in accordance with the statute.

2. The [Agreement], which referenced and incorporated Ferretti's bid, was subject to the costs associated with obtaining state-approved blueprints and a storm water drain plan, including Ferretti's costs of complying with such specifications. The fire station could not have been built unless a storm water drain plan was approved and carried

out. Because the parties anticipated the storm water drain plan and incorporated it in the agreement, it did not require the Town to follow the change order provisions of the statute.

\*　　\*　　\*　　\*　　\*　　\*

4. To the extent that any work necessary to complete the project was not expressly covered by the written agreement, the Town through its representatives assigned to oversee the project requested and approved such work. The Town would be unjustly enriched if it were to receive the benefit of the work without payment therefor.

5. Although the agreement did not contemplate certain work done by Ferretti, he made the Town aware of such work and the Town did not stop it. The result is a legally implied promise to pay for the benefit received. The conduct of the parties modified the term of the agreement requiring written modification.

Appellee's App. p. 19–20. Accordingly, the trial court entered judgment in favor of Ferretti in the amount of $57,393.57 plus costs of the action. The trial court did not award pre-judgment interest. This appeal ensued.

## Discussion and Decision

### I. The Town's Appeal

The Town contends that the trial court erroneously entered judgment in favor of Ferretti. When reviewing the trial court's findings of fact and conclusions thereon, we consider whether the evidence supports the findings and whether the findings support the judgment. *Ratliff v. Ratliff*, 804 N.E.2d 237, 244 (Ind.Ct.App.

2004). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.*

The Town's central argument on appeal is that the trial court erroneously entered judgment in favor of Ferretti because "Ferretti failed to execute any change orders as required by [Indiana Code 36–1–12–18]." Appellant's Br. p. 9. Indiana Code § 36–1–12–18(a) provides:

> If, in the course of the construction, reconstruction, or repair of a public work project,[2] it becomes necessary to change or alter the original specifications, a change order may be issued to add, delete, or change an item or items in the original contract. The change order becomes an addendum to the contract and must be approved and signed by the board and the contractor.

Although the trial court found that "[t]here were no change orders executed by the parties in accordance with the statute," Appellee's App. p. 19, this does not mean that Ferretti is not entitled to compensation for some of the changes he made to the fire station. For purposes of analysis, we divide the changes Ferretti made to the fire station into three categories: (1) the storm water drain plan; (2) changes required by state codes and requirements; and (3) all other changes. We address each of these categories in turn.

2. The fire station qualifies as a public work project, which is defined as "the construction, reconstruction, alteration, or renovation of a public building, airport facility, or other structure that is paid for out of a public fund or out of a special assessment." Ind.Code § 36–1–12–2.

## A. Storm Water Drain Plan

Ferretti implemented a storm water drain plan, which accounted for $20,142.54 of the 57,393.57. The trial court concluded that change orders with respect to the storm water drain plan were not required because the Agreement specifically incorporated Ferretti's bid, which provided that Ferretti would be compensated for the additional costs of complying with the State-approved plans. *See* Appellee's App. p. 8, 9, 10 ("[T]he Contractor does hereby agree to furnish all materials, equipment and labor necessary and to fully construct the work set forth in the contractor's bid of 11 April 2000 and as set forth in the specifications on which the bid was made, all of which are hereby incorporated . . . ."). The State conditioned the approval of the plans upon a storm water drain plan being implemented. Because the Agreement incorporated the costs of complying with the State-approved plans, the Town and Ferretti did not need to execute a change order in accordance with Indiana Code § 36–1–12–18(a) for the costs of implementing the storm water drain plan. The Town has failed to show that the trial court's judgment on this point was clearly erroneous; therefore, the Town must pay Ferretti for the costs of implementing the storm water drain plan, specifically $20,142.54.

## B. Changes Required by State Codes and Requirements

Ferretti also made changes to the fire station that he claims were mandated by State law, such as installing showers and grab bars that complied with the ADA and draft stops in the truss assembly. Ferretti did not obtain written change orders from the Town Board for these changes. However, this failure is not dispositive. Unless a contract provides otherwise, it is implied that the parties intend to comply with all applicable statutes and city ordinances in effect at the time the contract was formed. *See, e.g., Homer v. Burman,* 743 N.E.2d 1144, 1147 (Ind.Ct.App.2001) (holding that the contractor was bound to abide by the applicable electric code and the Indiana Home Improvement Contracts Act, both of which were in existence when the contract was formed), *reh'g denied.* Moreover, the Agreement specifically incorporated Ferretti's bid, which provided that Ferretti would be compensated for the additional costs of adhering to state codes and requirements. Based on both of these, we conclude that Ferretti is entitled to be compensated for the changes he made to the fire station that were mandated by state law. However, because there is a dearth of evidence in the record regarding whether any of the changes were actually mandated by state law, we remand this case to the trial court for this limited purpose. To the extent that the evidence shows that any of the changes were mandated by state law, Ferretti is entitled to be compensated for them.

## C. Remaining Changes

As for the remaining changes that Ferretti made to the fire station, the trial court concluded:

> To the extent that any work necessary to complete the project was not expressly covered by the written agreement, the Town through its representatives assigned to oversee the project requested and approved such work. The Town would be unjustly enriched if it were to receive the benefit of the work without payment therefor.

Appellee's App. p. 20. The Town argues on appeal that unjust enrichment does not apply to the facts of this case and that it would violate public policy to allow Ferretti to recover.

To prevail on a claim of quantum meruit—also referred to as unjust enrichment, contract implied-in-law, constructive contract, or quasi-contract—the plaintiff must establish that a measurable benefit has been conferred upon the defendant under such circumstances that the defendant's retention of the benefit would be unjust. *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind.1991), *reh'g denied; King v. Terry*, 805 N.E.2d 397, 400 (Ind.Ct.App. 2004). Quantum meruit is an equitable doctrine permitting recovery where the circumstances are such that under the law of natural and immutable justice there should be recovery as though there has been a promise. *Id.* Quantum meruit's origin predates the merger of the courts of chancery and law. *King*, 805 N.E.2d at 400. Consequently, a contract precludes application of quantum meruit because: (1) a contract provides a remedy at law; and (2) as a remnant of chancery procedure, a plaintiff may not pursue an equitable remedy when there is a remedy at law. *Id.* More specifically, when the rights of parties are controlled by an express contract, recovery cannot be based upon a theory implied in law. 6 I.L.E. *Contracts* § 5 (2000); *see also Bayh*, 573 N.E.2d at 409; *Engelbrecht v. Prop. Developers, Inc.*, 156 Ind.App. 354, 296 N.E.2d 798, 801 (1973). Thus, the existence of a valid express contract for services precludes the implication of a contract covering the same subject matter. 6 I.L.E. *Contracts* § 5; *see also Kern v. City of Lawrenceburg*, 625 N.E.2d 1326, 1329 (Ind.Ct.App.1993).

Here, the Town and Ferretti entered into an express contract for the construction of the fire station. Specifically, the Agreement provided that any changes to the cost of the project must be made in writing. Because there is a valid express contract for the construction of the fire station, Ferretti is precluded from recovering under the theory of quantum meruit. *See Kern*, 625 N.E.2d at 1329. Accordingly, the trial court's judgment on this point is clearly erroneous.

Additionally, we find that it would violate public policy to allow Ferretti to recover for the changes he made to the fire station that were neither related to the storm water drain plan nor mandated by state law. We first note that there are various statutory provisions governing public work projects. *See* Ind.Code §§ 36–1–12–1 to –21. Specifically, Indiana Code § 36–1–12–4 sets forth certain procedures that the board must follow in awarding public work contracts, such as the requirement of competitive bidding:

(8) [T]he board shall:

(A) award the contract for public work or improvements to the lowest responsible and responsive bidder; or

(B) reject all bids submitted.

(9) If the board awards the contract to a bidder other than the lowest bidder, the board must state in the minutes or memoranda, at the time the award is made, the factors used to determine which bidder is the lowest responsible and responsive bidder and to justify the award. The board shall keep a copy of the minutes or memoranda available for public inspection.

(10) In determining whether a bidder is responsive, the board may consider the following factors:

(A) Whether the bidder has submitted a bid or quote that conforms in all material respects to the specifications.

(B) Whether the bidder has submitted a bid that complies specifically with the invitation to bid and the instructions to bidders.

(C) Whether the bidder has complied with all applicable statutes, ordi-

nances, resolutions, or rules pertaining to the award of a public contract. Ind.Code § 36–1–12–4(b)(8)–(10). "The purpose behind competitive bidding statutes is to safeguard the public against fraud, favoritism, graft, extravagance, improvidence and corruption, and to insure honest competition for the best work or supplies at the lowest reasonable cost." *Schindler Elevator Corp. v. Metro. Dev. Comm'n*, 641 N.E.2d 653, 657 (Ind.Ct.App. 1994); *see also Shook Heavy & Envtl. Constr. Group, a Div. of Shook, Inc. v. City of Kokomo*, 632 N.E.2d 355, 358 (Ind. 1994) ("[C]ompetitive bidding statutes are enacted for the benefit of property holders and taxpayers and not for the benefit or enrichment of bidders.") (quotation omitted); *Brooks v. Gariup Constr. Co.*, 722 N.E.2d 834, 839 (Ind.Ct.App.1999), *trans. denied.* Along these same lines, Indiana Code § 36–1–12–18(a) requires changes in a public work project to be done by a change order, which must be approved and signed by the board and the contractor. Additionally, Indiana Code § 36–1–12–18(d) provides that "[t]he total of all change orders issued that increase the scope of the project may not exceed twenty percent (20%) of the amount of the original contract. A change order issued as a result of circumstances that could not have been reasonably foreseen does not increase the scope of the project."

We conclude that it would be against public policy to allow Ferretti to recover the costs of the changes he made to the fire station that were not included in the Agreement, not mandated by state law, and not otherwise approved by the Town Board. In order for him to recover the additional costs, Ferretti should have either obtained written change orders from the Town Board or refused to perform the additional work that he was under no obligation to perform. To allow recovery under an unjust enrichment theory in these circumstances would lead to an undermining of the protection that the competitive bidding process provides to taxpayers. To allow Ferretti to circumvent the requirements of the competitive bidding process would not safeguard the public against fraud, favoritism, graft, extravagance, improvidence, and corruption and does not ensure that the best work is done at the lowest reasonable cost. *See Schindler*, 641 N.E.2d at 657.

## II. Ferretti's Cross–Appeal

 Ferretti cross-appeals, contending that the trial court should have awarded him pre-judgment interest on the contractual damages portion of the $57,393.57 award.[3] The contractual damages portion of the award amounts to at least $20,142.54,[4] which represents Ferretti's costs of implementing the storm water drain plan. "An award of pre-judgment interest in a breach of contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable." *Olcott Int'l & Co. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1078 (Ind.Ct.App.2003), *trans. denied.* The test for determining whether an award of pre-

3. Although Ferretti argues on appeal that the trial court should have awarded him pre-judgment interest on the full $57,393.57, the case law he cites governs pre-judgment interest on contractual damages only. Therefore, we only address whether the trial court should have awarded Ferretti pre-judgment interest on the contractual damages portion of the award.

4. In the event that the trial court determines on remand that any of the changes Ferretti made to the fire station were mandated by state law and therefore he is entitled to be compensated for them, we conclude that Ferretti is entitled to pre-judgment interest on those damages as well.

judgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time. *Id.* The award is considered proper when the trier of fact does not have to exercise its judgment to assess the amount of damages. *Noble Roman's, Inc. v. Ward,* 760 N.E.2d 1132, 1140 (Ind.Ct.App.2002). Importantly for purposes of our review, an award of pre-judgment interest is generally not considered a matter of discretion. *Olcott,* 793 N.E.2d at 1078; *Ward,* 760 N.E.2d at 1140.

[16] Here, the trial court found that "[t]he cost of the changes to the project, including the storm water drain plan, came to a total of $57,393.57." Appellee's App. p. 19. Although the trial court did not subtract the costs of implementing the storm water drain plan from the total figure in its findings, the itemized list that Ferretti submitted to the Town Board shows that the storm water drain plan accounts for $20,142.54. *See* Appellee's App. p. 14.[5] Because the damages were complete and ascertainable at the time of trial, the trial court did not have the discretion to deny Ferretti pre-judgment interest. Accordingly, we order the trial court to award Ferretti pre-judgment interest on the contractual damages portion of the award, specifically $20,142.54.

Affirmed in part, reversed in part, and remanded in part.

SULLIVAN, J., and MAY, J., concur.

---

5. The itemized list provides in pertinent part:
 **12) Storm Water Plan (required)**
 ● Storm water layout, dig, hauling and materials **19,205.00**

● **See attached invoices**
● PVC Schedule40 drain pipe and storm tap materials & labor **937.54**
Appellee's App. p. 14 (emphasis in original).