Pamela S. **FACKLER**, Appellant–Petitioner,

v.

**Melvin J. POWELL, Jr. and M. Jack Powell, Jr. Living Trust, Appellees–Respondents.**

No. 02A04–0712–CV–747.

Court of Appeals of Indiana.

Aug. 12, 2008.

Perry D. Shilts, Shilts Law Office, Fort Wayne, IN, Attorney for Appellant.

Stephen P. Rothberg, Fort Wayne, IN, Attorney for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Petitioner Pamela S. Fackler ("Fackler") appeals a post-dissolution order interpreting a Mediated Settlement Agreement ("the Agreement") and awarding attorneys' fees to Fackler's ex-husband Melvin J. Powell, Jr. and the M. Jack

Powell, Jr. Living Trust (collectively, "Powell"). We reverse and remand.

### Issues

Fackler presents five issues for review, which we consolidate and restate as two:

I. Whether the trial court erred by concluding that the Agreement was ambiguous, and further concluding, after the admission of extrinsic evidence, that Fackler was contractually entitled to $23,000.00 as opposed to the full value of a promissory note and mortgage; and

II. Whether the award of attorneys' fees is erroneous because Fackler, rather than Powell, is entitled to attorneys' fees.

■ On cross-appeal, Powell raises issues of whether Fackler was improperly granted summary judgment on Powell's counterclaim for fraud[1] and whether Fackler owes interest and additional attorneys' fees.[2]

### Facts and Procedural History

On December 31, 1996, Fackler and Powell were married, and on October 3, 2001, Fackler filed a petition for dissolution in Allen Superior Court—Family Relations Division (the "dissolution court"). On March 21, 2002, Fackler and Powell took part in a mediation of the final settlement of their divorce action, resulting in the Agreement. The dissolution court approved the Agreement and entered it as part of the final decree on March 22, 2002.

Paragraph B(3) of the Agreement details the property that Fackler was to receive, and Paragraph C(5) details the property that Powell was to receive. Paragraph B(3)(g) of the Agreement awards the following to Fackler:

> Promissory Note and Mortgage given by Thomas Penny Builder to Husband in the amount of $23,000.00 which Husband shall assign to Wife. Said Note shall be paid upon the sale of Lot 22, Covington Pines and in any event by no later than December 31, 2002 Husband shall guarantee payment of said Note. Upon payment by Husband, Wife shall reassign the Note and Mortgage to Husband.

(Pet.Ex.1.) At the time that the parties signed and the dissolution court approved the Agreement, $94,300.11 was owed on the Promissory Note and Mortgage from Thomas Penny Builder. On May 28, 2002, Powell forwarded to Fackler a signed Assignment of Promissory Note and Mortgage (the "Assignment"). Copies of the Promissory Note and Mortgage were attached to the Assignment. The Promissory Note provides that the borrower is to

---

1. The summary disposition of Powell's counterclaim was appropriate. An award of summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Indiana Trial Rule 56. Powell's counterclaim for fraud and conversion alleged that Fackler filed her claim to recover a sum greater than $23,000 knowing that she was entitled to no more than $23,000. In essence, Powell claimed that Fackler filed a complaint without probable cause and committed malicious prosecution. Malicious prosecution consists of the following elements: prosecution, without probable cause, with malice, termination in favor of the original defendant, and damages to the defendant. 19 Indiana Law Encyclopedia, Malicious Prosecution § 1 (2003). At the time of the ruling on the summary judgment motion, the trial court could reach but a sole conclusion: there had been no prosecution terminated in Powell's favor. Fackler was entitled to summary judgment on the malicious prosecution counterclaim.

2. Because we decide that Fackler, rather than Powell, was entitled to attorneys' fees, we need not address the request for additional attorneys' fees.

pay twenty-three thousand dollars and the total of all documented construction costs, not to exceed eighty thousand dollars.

On September 4, 2002, Thomas Penny Builder and his company, Construction Information Systems, LLC, conveyed Lot 22 to Powell's Living Trust. Powell then notified Fackler that he would pay Fackler $23,000 plus interest at eight percent on February 6, 2003. Displeased with Powell's intentions, Fackler filed a Verified Complaint for Establishment of Constructive Trust Or To Quiet Title, Or, In The Alternative, Suit Upon Note And To Foreclose Real Estate Mortgage in Allen Superior Court—Civil Division (the "trial court") against Powell on January 29, 2003. The complaint alleged that Fackler held legal and equitable title to the Note and Mortgage and sought the remaining balance on the Note.

Subsequently, on February 6, 2003, Powell's Living Trust sold Lot 22 for a gross selling price of $114,900.00. On the same date, Powell paid Fackler $23,000 plus accrued interest in the amount of $179.40. The parties placed $83,785.44, the balance of the selling price of Lot 22, in an escrow account.

On June 6, 2003, Fackler filed a motion for summary judgment, alleging that she was entitled to judgment as a matter of law because the Agreement clearly and unambiguously awarded full ownership of the Promissory Note and Mortgage to her. On July 7, 2003, Powell filed a motion for summary judgment of his own, asserting that he was entitled to judgment as a matter of law because the trial court did not have subject matter jurisdiction or, in the alternative, because the Agreement clearly and unambiguously awarded only $23,000 to Fackler, leaving Powell the owner of the Promissory Note and Mortgage. Following a hearing on August 1, 2003, on October 16, 2003, the trial court

denied both parties' summary judgment motions. Fackler filed a motion for certification of interlocutory appeal on October 27, 2003, which was ultimately granted by the trial court.

On December 22, 2003, this Court accepted jurisdiction. This Court issued an opinion in *Fackler v. Powell*, 816 N.E.2d 476, 478–79 (Ind.Ct.App.2004), which was vacated on jurisdictional grounds. On transfer, the Indiana Supreme Court determined that Fackler should have filed her claim in the dissolution court, which retained jurisdiction to interpret and enforce marital settlements. *Fackler v. Powell*, 839 N.E.2d 165 (Ind.2005).

Fackler re-filed her claim in the dissolution court, and Powell filed a counterclaim alleging fraud and conversion. The trial court granted Fackler summary judgment on the counterclaim. A hearing was conducted on September 14, 2007, at which the parties and the mediator who drafted the Agreement testified. On December 13, 2007, the trial court entered its Findings, Conclusions and Order concluding that Fackler had a contractual right to $23,000.00 and ordering her to pay $20,000.00 attorneys' fees to Powell.

### Discussion and Decision

■ Fackler contends that the Agreement unambiguously awarded her full ownership of a promissory note and mortgage referenced therein. Accordingly, she argues that the trial court erred when it declared the Agreement ambiguous and admitted the testimony of mediator Edward Beck ("Beck") to resolve the alleged ambiguity.

■ Settlement agreements are governed by the same general principles of contract law as any other agreement. *Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1018 (Ind.1998). The interpretation and construction of a contract is

a function for the courts. *Stenger v. LLC Corp.*, 819 N.E.2d 480, 484 (Ind.Ct.App. 2004), *trans. denied.* If the contract language is unambiguous and the intent of the parties is discernible from the written contract, the court is to give effect to the terms of the contract. *Id.* A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation; however, the terms of a contract are not ambiguous merely because the parties disagree as to their interpretation. *Id.* When the contract terms are clear and unambiguous, the terms are conclusive and we do not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions. *Id.*

Here, the clause at issue, Paragraph B(3)(g) provides in relevant part:

> Wife shall be given, granted and awarded as her sole property, free and clear of any and all claims which Husband may have therein or thereto, the following assets:
>
> Promissory Note and Mortgage given by Thomas Penny Builder to Husband in the amount of $23,000.00 which Husband shall assign to Wife. Said Note shall be paid upon the sale of Lot 22, Covington Pines and in any event by no later than December 31, 2002 Husband shall guarantee payment of said Note. Upon payment by Husband, Wife shall reassign the Note and Mortgage to Husband[.]

(Pet.Ex.2, pgs.2–3.) Accordingly, the Agreement assigned a promissory note and mortgage to Fackler. A corollary provision, Paragraph C(5)(k) provides that "Husband shall be given, granted and awarded as his sole property . . . any and all interest in receivables due from Thomas Penny, Builder (3 lots), *except the Promissory Note in paragraph 3(g))*." (Pet.Ex.2, pg.5) (emphasis added.) Powell promptly executed an assignment of the

note and mortgage identified by the parties in Paragraph B(3)(g). There has been no factual dispute as to which note and mortgage the parties intended to be assigned.

The Promissory Note, incorporated by reference into the Agreement, provides that the borrower is to pay "the sum of Twenty-three Thousand Dollars ($23,-000.00) and the total of all documented construction costs, not to exceed Eighty Thousand Dollars ($80,000.00)." (Pet. Ex.3.) The Real Estate Mortgage, dated March 29, 2001, was executed "to secure the payment when the same shall become due, of that certain Promissory Note of even date herewith in the sum of $103,000.00[.]" (Pet.Ex.4.)

Descriptively, the Agreement references the promissory note by its principal amount and does not specify the full amount due. Nevertheless, it is clear from an examination of the relevant documents that Fackler was assigned a promissory note for $23,000.00 and construction costs. Pursuant to the Agreement, Fackler received the note free and clear of claims from Powell. Powell's only interest was in re-assignment of the note and mortgage after he paid Fackler. Accordingly, the Agreement was not ambiguous.

■ Therefore, extrinsic evidence should not have been admitted. We agree with Fackler that the trial court improperly allowed testimony from the mediator and drafter of the Agreement. At the hearing, Powell offered Beck's testimony to "conclusively resolve ambiguity" in the Settlement. (Tr. 121.) Over Fackler's objections that the testimony violated the privilege and confidentiality of mediation and was conclusory so as to invade the province of the court, Beck testified that Fackler "was to receive $23,000." (Tr. 123.)

 Alternative Dispute Resolution Rule 2.11 provides that "mediation shall be regarded as settlement negotiations as governed by Ind. Evidence Rule 408" and further provides:

> [m]ediators shall not be subject to process requiring the disclosure of any matter discussed during the mediation, but rather, *such matter shall be considered confidential and privileged in nature. The confidentiality requirement may not be waived by the parties,* and an objection to the obtaining of testimony or physical evidence from mediation may be made by any party or by the mediators.

(emphasis added.) Evidence Rule 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim, which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. Compromise negotiations encompass alternative dispute resolution.

Thus, the ADR rules expressly provide that the parties may not waive the confidentiality requirement. *R.R. Donnelley & Sons Co. v. No. Texas Steel Co., Inc.,* 752 N.E.2d 112, 130 (Ind.Ct.App.2001), *trans. denied.* "The ADR provisions are designed to protect the integrity of the mediation process itself and they are operational despite any attempt by the parties to override them." *Id.*

Here, Beck attempted to establish the amount of the claim, based solely upon his information gathered in the mediation process, in contravention of the foregoing rule of evidence. Beck stated that the purpose of his testimony was merely to reveal his "intent" when he drafted the Settlement. However, A.D.R. Rule 2.1 specifically provides: "[a]ny agreement reached by the parties is to be based on the autonomous decisions of the parties and not the decisions of the mediator." As such, Beck's personal "intent" was irrelevant. Beck's knowledge was wholly derived in his role as a mediator and his "intent" as directed by the parties was a culmination of negotiations. To the extent that Beck possessed relevant information regarding the amount of the claim, it was inadmissible having been obtained in the course of negotiations.

The note assigned to Fackler was in the amount of $23,000 plus construction costs up to $80,000. It was to be paid from the proceeds from the sale of Lot 22. Powell received $114,900 from the sale of Lot 22. He was obligated to pay Fackler $103,000 pursuant to the Agreement.

## II. Attorneys' Fees

 The trial court awarded Powell attorneys' fees of $20,000 upon finding it inequitable that Powell should bear the entire burden of Fackler's original decision to file her enforcement action in the wrong court. Fackler complains that this award of attorneys' fees is contrary to law.

 The trial court stated in relevant part:

> The court cannot conclude that the Petitioner's position was without merit. However, the Respondent did incur fees related to the summary judgment proceeding and appeal that ultimately de-

termined that the matter should have been filed with the court granting the dissolution of marriage. Respondent should not therefore be burdened with the entire costs associated with the litigation and appeal. An award of attorney fees of $20,000.00 is reasonable.

(App.29.) Indiana adheres to the "American Rule" with respect to the payment of attorneys' fees, which requires each party to pay his or her own attorneys' fees absent an agreement between the parties, statutory authority, or rule to the contrary. *Courter v. Fugitt,* 714 N.E.2d 1129, 1132 (Ind.Ct.App.1999). Indiana Code Section 34–52–1–1(b) provides for the payment of attorneys' fees when a litigant has pursued a claim or defense that is frivolous, unreasonable, or groundless, but does not provide for an equitable apportionment of fees in other circumstances.[3] Here, the trial court specifically found that Fackler did not pursue a claim without merit, and we have agreed with that assessment. Powell has not established a statutory entitlement to attorneys' fees so as to prevent application of the "American Rule."

▮ However, there is an agreement between the parties contrary to the "American Rule." The Agreement contains an indemnification provision, as follows:

Each party agrees to indemnify and save and hold the other harmless from all damages, losses, expenses (including attorney's fees), costs and other fees incurred by reason of the indemnitor's violation or breach of any of the terms and conditions hereof.

(Pet.Ex.2, pg.7.) Fackler established that Powell breached the Agreement. Accordingly, Powell must pay attorneys' fees because of his breach, in an amount to be determined by the trial court.

▮ We reverse and remand for an order that Powell pay the balance due upon the sale of Lot 22, reasonable attorneys' fees, and prejudgment interest.[4]

Reversed and remanded.

FRIEDLANDER, J., concurs.

KIRSCH, J., concurs in result with opinion.

KIRSCH, Judge, concurring in result.

I fully concur with the decision of my colleagues holding the mediated settlement agreement was unambiguous and that, therefore, the trial court erred in admitting extrinsic evidence to prove the meaning of its terms. I also fully concur with the decision regarding attorney fees. I part ways with my colleagues, however, in regard to their discussion of mediation confidentiality.

This case turns upon long-established principles of contract interpretation. "Where the terms of a contract are clear

---

**3.** A claim or defense is "frivolous" if it is taken primarily for the purpose of harassment, if the attorney is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. *Kahn v. Cundiff,* 533 N.E.2d 164, 167 (Ind.Ct.App. 1989), *aff'd,* 543 N.E.2d 627 (Ind.1989). A claim or defense is "unreasonable" if, based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider that the claim or defense was worthy of litigation. A claim or defense is "groundless" if no facts exist which support the legal claim presented by the losing party. *Id.* at 170–71.

**4.** An award of prejudgment interest in a breach of contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable. *Olcott Intern. & Co., Inc. v. Micro Data Base Sys., Inc.,* 793 N.E.2d 1063, 1079 (Ind.Ct.App.2003), *trans. denied.*

and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions." *Stenger v. LLC Corp.*, 819 N.E.2d 480, 484 (Ind.Ct. App.2004), *trans. denied* (2005). From my perspective, the source of the extrinsic evidence is of no moment; whatever its source, it is inadmissible. Whether it is subject to claims of confidentiality or privilege is similarly not relevant.

I do not read Alternate Dispute Resolution Rule 2.11 as broadly as do my colleagues. The rule is specifically subject to Indiana Evidence Rule 408 that provides for exclusion of offers of compromise, but that also specifically provides: "This rule does not require exclusion when the evidence is offered for another purpose, such as providing bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Whether "another purpose" includes extrinsic proof of the intent of the parties to a mediated settlement is a question that I would hold for another day.