**Pamela S. FACKLER, Appellant–Petitioner,**

v.

**Melvin J. POWELL, Jr., and M. Jack Powell, Jr., Living Trust, Appellees–Respondents.**

No. 02A03–0906–CV–287.

Court of Appeals of Indiana.

March 17, 2010.

Perry D. Shilts, Shilts Law Office, Fort Wayne, IN, Attorney for Appellant.

Stephen P. Rothberg, Fort Wayne, IN, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Pamela Fackler appeals the trial court's post-dissolution order regarding prejudgment interest and attorney's fees. Fackler raises two issues for our review:

1. Whether the trial court erred when it calculated the amount of prejudgment interest to which Fackler is entitled.

2. Whether the trial court abused its discretion when it calculated the amount of Fackler's attorney's fees to be paid by Melvin Powell, Jr., Fackler's ex-husband.

On cross-appeal, Powell also challenges the trial court's award of attorney's fees. And Powell contends that Fackler is not entitled to prejudgment interest for a certain period of time.

We affirm in part, reverse in part, and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

In *Fackler v. Powell*, 891 N.E.2d 1091, 1094–95 (Ind.Ct.App.2008), *trans. denied*, (*"Fackler III"*), we set out the facts and procedural history as follows:

On December 31, 1996, Fackler and Powell were married, and on October 3, 2001, Fackler filed a petition for dissolution in Allen Superior Court–Family Relations Division (the "dissolution court"). On March 21, 2002, Fackler and Powell took part in a mediation of the final settlement of their divorce action, resulting in the Agreement. The dissolution court approved the Agreement and entered it as part of the final decree on March 22, 2002.

Paragraph B(3) of the Agreement details the property that Fackler was to receive, and Paragraph C(5) details the property that Powell was to receive. Paragraph B(3)(g) of the Agreement awards the following to Fackler:

Promissory Note and Mortgage given by Thomas Penny Builder to Husband in the amount of $23,000.00 which Husband shall assign to Wife. Said Note shall be paid upon the sale of Lot 22, Covington Pines and in any event by no later than December 31, 2002[.] Husband shall guarantee payment of said Note. Upon payment by Husband, Wife shall reassign the Note and Mortgage to Husband.

(Pet. Ex. 1.) At the time that the parties signed and the dissolution court approved the Agreement, $94,300.11 was owed on the Promissory Note and Mortgage from Thomas Penny Builder. On May 28, 2002, Powell forwarded to Fackler a signed Assignment of Promissory Note and Mortgage (the "Assignment"). Copies of the Promissory Note and Mortgage were attached to the Assignment. The Promissory Note provides

that the borrower is to pay twenty-three thousand dollars and the total of all documented construction costs, not to exceed eighty thousand dollars.

On September 4, 2002, Thomas Penny Builder and his company, Construction Information Systems, LLC, conveyed Lot 22 to Powell's Living Trust. Powell then notified Fackler that he would pay Fackler $23,000 plus interest at eight percent on February 6, 2003. Displeased with Powell's intentions, Fackler filed a Verified Complaint for Establishment of Constructive Trust Or To Quiet Title, Or, In The Alternative, Suit Upon Note And To Foreclose Real Estate Mortgage in Allen Superior Court–Civil Division (the "trial court") against Powell on January 29, 2003. The complaint alleged that Fackler held legal and equitable title to the Note and Mortgage and sought the remaining balance on the Note.

Subsequently, on February 6, 2003, Powell's Living Trust sold Lot 22 for a gross selling price of $114,900.00. On the same date, Powell paid Fackler $23,000 plus accrued interest in the amount of $179.40. The parties placed $83,785.44, the balance of the selling price of Lot 22, in an escrow account.

On June 6, 2003, Fackler filed a motion for summary judgment, alleging that she was entitled to judgment as a matter of law because the Agreement clearly and unambiguously awarded full ownership of the Promissory Note and Mortgage to her. On July 7, 2003, Powell filed a motion for summary judgment of his own, asserting that he was entitled to judgment as a matter of law because the trial court did not have subject matter jurisdiction or, in the alternative, because the Agreement clearly and unambiguously awarded only $23,000 to Fackler, leaving Powell the owner of the Promissory Note and Mortgage. Following a hearing on August 1, 2003, on October 16, 2003, the trial court denied both parties' summary judgment motions. Fackler filed a motion for certification of interlocutory appeal on October 27, 2003, which was ultimately granted by the trial court.

On December 22, 2003, this Court accepted jurisdiction. This Court issued an opinion in *Fackler v. Powell*, 816 N.E.2d 476, 478–79 (Ind.Ct.App.2004) [ (*"Fackler I"*) ], which was vacated on jurisdictional grounds. On transfer, the Indiana Supreme Court determined that Fackler should have filed her claim in the dissolution court, which retained jurisdiction to interpret and enforce marital settlements. *Fackler v. Powell*, 839 N.E.2d 165 (Ind.2005) [ (*"Fackler II"*) ].

Fackler re-filed her claim in the dissolution court, and Powell filed a counterclaim alleging fraud and conversion. The trial court granted Fackler summary judgment on the counterclaim. A hearing was conducted on September 14, 2007, at which the parties and the mediator who drafted the Agreement testified. On December 13, 2007, the trial court entered its Findings, Conclusions and Order concluding that Fackler had a contractual right to $23,000.00 and ordering her to pay $20,000.00 attorneys' fees to Powell.

Fackler appealed from the trial court's December 13, 2007, order. This court held that Fackler was entitled to $103,000 pursuant to the Agreement and that Powell was obligated to pay Fackler's attorney's fees "in an amount to be determined by the trial court." *Id.* at 1098. On remand from that appeal, and following a hearing, the trial court issued its June 2, 2009, Order, whereby Powell was to pay to Fackler "a judgment balance of $31,-

162.20 [1] which includes interest of $6.78 per day since February 6, 2009[;]" and Powell was to pay $62,284.43 of Fackler's attorney's fees. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Prejudgment Interest

Fackler first contends that the trial court erred when it calculated the prejudgment interest to be applied to the judgment. The trial court found and concluded in relevant part:

5. Acting on the terms of the Mediated Agreement, [Powell] assigned the promissory note and mortgage on Lot 22 to [Fackler]. Notwithstanding the assignment, and in lieu of foreclosure, the obligor on the note deeded Lot 22 back to [Powell]. [Powell] did not pay [Fackler] any money on that date or on the payment guarantee date of December 31, 2002. Instead, partial payment was made to [Fackler] on February 6, 2003, the date the property was sold by [Powell] to a third party. The Court determines from [Powell's] actions [ ] that the date on which the parties were to calculate and distribute funds realized from the sale of Lot 22 was on February 6, 2003. *It was on that date that the sums due to [Fackler] could be finally ascertained and judgment entered.*

6. Indiana Code [Section] 24–4.6–1–102 provides for prejudgment interest at a rate of eight (8%) per cent per annum when the parties do not otherwise agree on a rate. *A rate was specified in the note. Thus prejudgment interest is to be calculated on the rate of twelve per cent (12%) per annum from the date of the decree of dissolution of marriage to February 6, 2003.* From Petitioner's Exhibit 11, the Court finds that [Fackler] is entitled to prejudgment interest

from the date of the decree of dissolution to February 6, 2003 in the amount of $9,951.00.

7. From the above referenced sale proceeds [Powell] distributed $23,179.40 to [Fackler]. *Thus, a judgment amount of $81,133.71 remained due and owing on February 6, 2003. Judgment interest of eight (8%) per annum has thereafter accrued on the unpaid balance (See I.C. 24–4.6–1–101).* Judgment interest on that sum is calculated to be $17.78 per day. From Petitioner's Exhibits 11 and 12, the Court finds that a total of 2,228 days elapsed from February 6, 2003 until February 6, 2009; the date on which the next installment was paid.

8. On February 6, 2009, $120,747.55 was due. Against that sum, [Powell] paid [Fackler] $89,822.65. Therefore, $30,924.90 remains due together with judgment interest of $6.78 per day.

Appellant's App. at 28 (emphases added).

Prejudgment interest is awarded to fully compensate an injured party for the lost use of money. *Cincinnati Ins. Co. v. BACT Holdings, Inc.,* 723 N.E.2d 436, 441 (Ind.Ct.App.2000), *trans. denied.* Prejudgment interest is computed from the time the principal amount was demanded or due and is allowable at the permissible statutory rate when no contractual provision specifies the interest rate. *Id.*

Here, Fackler asserts that the trial court erred when it ordered that the 12% prejudgment default interest rate apply only up to February 6, 2003, and that the statutory 8% post-judgment interest rate apply from February 6, 2003, until the judgment was satisfied. Fackler maintains that the 12% prejudgment interest rate should apply from the date of dissolution until the date of the judgment, namely, June 2, 2009. Powell contends,

---

1. Powell had paid Fackler $89,822.65 prior to   the order on remand.

however, that "[t]he note was no longer in default after the property was sold" on February 6, 2003. We agree with Fackler.

The terms of the Promissory Note provided for 12% interest "during such period when there shall be any delinquency or default in the payment of any moneys to be paid on this obligation." Appellant's App. at 151. From what we can glean from the record on appeal,[2] the parties agreed that the Promissory Note was in default on the date of the dissolution decree. Also undisputed is the fact that the Promissory Note was assigned to Fackler under the terms of the dissolution decree. Indeed, in *Fackler III*, we held that pursuant to the dissolution decree, Fackler received the Promissory Note "free and clear of claims from Powell," other than Powell's interest in re-assignment of the Note and mortgage after he, the guarantor, had paid Fackler. 891 N.E.2d at 1096. We further held:

> The note assigned to Fackler was in the amount of $23,000 plus construction costs up to $80,000. It was to be paid from the proceeds from the sale of Lot 22. Powell received $114,900 from the sale of Lot 22. He was obligated to pay Fackler $103,000 pursuant to the [dissolution decree].

*Id.* at 1097.

" '[A]n assignment ordinarily passes whatever is necessary to make it completely effectual, and vests in the assignee all rights, remedies, and contingent benefits which are incidental to the thing assigned[.]' " *Essex v. Ryan,* 446 N.E.2d

368, 375 (Ind.Ct.App.1983) (quoting 6A C.J.S. Assignments § 76 (1975)). Fackler owned the Promissory Note as of March 22, 2002, the date of the dissolution decree and assignment, and she was, as of that date, entitled to 12% interest during any period of delinquency or default. On February 6, 2003, Powell paid Fackler $23,000 plus accrued interest in the amount of $179.40. But, as we determined in *Fackler III*, Powell owed Fackler $103,000 principal on the Promissory Note. Thus, on remand, the trial court determined that Powell owed Fackler an additional $81,133.71. We hold that Powell's nonpayment of that obligation constituted a default under the terms of the Note.[3] And that obligation was not satisfied until the trial court entered the judgment on June 2, 2009. Accordingly, Fackler is entitled to 12% interest from March 22, 2002, until June 2, 2009.

The date of February 6, 2003, has no significance, except that Powell made a payment in partial satisfaction of the Promissory Note on that date. No judgment was entered on that date. The Note was due not later than December 31, 2002. Judgment on the Note was not entered until June 2, 2009. Again, Fackler is entitled to prejudgment interest at the default rate of 12% per annum until the date of judgment.

We agree with Fackler that the trial court's references to the *"judgment* amount of $81,133.71 remain[ing] due and owing on February 6, 2003" and Indiana

---

2. Powell does not suggest that the trial court erred when it applied the 12% interest rate to the time period preceding December 31, 2002.

3. As we have noted, Powell asserts that "[t]he note was no longer in default after the property was sold, so the contractual interest rate

for default could not be applied after that time." Brief of Appellee at 9. But Powell does not direct us to any part of the record or citation to authority to support that contention. And, again, we hold that the Note continued to be in default until the judgment in favor of Fackler.

Code Section 24–4.6–1–101 [4] indicate that the trial court erroneously applied the post-judgment interest rate of 8% from that date. *Id.* at 28 (emphasis added). A "judgment" is a court's final determination of the rights and obligations of the parties in a case. BLACK'S LAW DICTIONARY 846 (7th ed. 1999). And Indiana Trial Rule 54(A) provides that the term "judgment" includes a decree and any order from which an appeal lies. Because the trial court did not enter judgment in this case until June 2, 2009, the trial court erred when it applied the 8% rate of "judgment interest" as of February 6, 2003, instead of the 12% default rate set out in the Note.

On cross-appeal, Powell contends that Fackler is not entitled to prejudgment interest for the period of time she pursued her action in the wrong court. On January 29, 2003, Fackler filed her complaint against Powell in the Allen Superior Court—Civil Division, and Powell challenged that court's jurisdiction, claiming that the dissolution court held exclusive subject matter jurisdiction. Those proceedings continued until December 20, 2005, when our Supreme Court ruled that Powell was correct and Fackler should have filed her complaint with the dissolution court.

■ In this appeal, Powell maintains that the "award [ ] of statutory interest during the time period of February 6, 2003, to December 20, 2005, was clearly improper because that period represents a period of delay that is wholly attributable to Fackler." Brief of Appellee at 19. For support, Powell cites to case law from other jurisdictions; he does not direct us to any Indiana case law directly on point. And Powell acknowledges that Indiana Code Section 24–4.6–1–102, which provides for the award of prejudgment interest at a

rate of 8% in the absence of an agreement otherwise, is silent on this issue.

■ It is well-settled that an award of prejudgment interest in a breach of contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable. *Town of New Ross v. Ferretti,* 815 N.E.2d 162, 169 (Ind.Ct.App. 2004). The test for determining whether an award of prejudgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time. *Id.* at 169–70. The award is considered proper when the trier of fact does not have to exercise its judgment to assess the amount of damages. *Id.* at 170. Importantly for purposes of our review, an award of prejudgment interest is generally not considered a matter of discretion. *Id.*

Here, in essence, Powell asserts that the trial court should have exercised its discretion to determine that Fackler was not entitled to prejudgment interest for the period of time during which she pursued her action in the wrong court. But such discretion is generally prohibited. *See id.* Again, prejudgment interest is awarded to fully compensate an injured party for the lost use of money. *Cincinnati Ins. Co.,* 723 N.E.2d at 441. Powell breached the parties' Agreement, thus depriving Fackler of the use of the money during the entire legal proceedings. It goes without saying that Powell could have avoided responsibility for all prejudgment interest had he not breached the parties' Agreement in the first instance. The period of delay of which Powell complains, then, was not "wholly" attributable to Fackler.

Still, Powell cites to a Texas case, *Tagle v. Galvan,* 155 S.W.3d 510 (Tex.App.2004), and a Tennessee case, *General Construction Contractors Association, Inc. v.*

---

**4.** That statute provides for 8% interest on money judgments.

*Greater St. Thomas Baptist Church,* 107 S.W.3d 513 (Tenn.Ct.App.2002), to support his contention on this issue. But both *Tagle* and *General Construction* turn on the trial court's exercise of discretion in awarding prejudgment interest, which is generally prohibited in Indiana. Moreover, in *Tagle,* the court held that "even if a claimant causes a period of delay, the trial court is not required to deny prejudgment interest because the decision is entirely within the trial court's discretion." 155 S.W.3d at 521.

In *Olcott International v. Micro Data Base Systems,* 793 N.E.2d 1063 (Ind.Ct. App.2003), *trans. denied,* the trial court denied prejudgment interest to the appellee for the period of "many years" it had delayed in attempting to collect on the appellant's debt. On appeal, we held that, while we "underst[ood] the trial court's sentiment," the trial court "lacked discretion to deprive" the appellee of that prejudgment interest. *Id.* at 1078–79. We reversed and remanded with instructions to recalculate the prejudgment interest to include the period of time when the appellant did not pursue collection. *Id.* at 1079.

Here, it follows that the trial court did not have discretion to deny Fackler prejudgment interest during the period of time she pursued her claim in the wrong court. Even if the trial court did have that discretion, Powell has not demonstrated an abuse of discretion on this issue.

### Issue Two: Attorney's Fees

Fackler next contends that the trial court abused its discretion when it ordered Powell to pay $62,284.43 of her attorney's fees. In particular, Fackler contends that Powell should pay the full amount of her attorney's fees, which totaled $105,757.32. On cross-appeal, Powell contends that the trial court abused its discretion when it ordered him to pay attorney's fees related to Fackler's unsuccessful attempts to file

interlocutory appeals in 2006. We address each issue in turn.

■ We review an award of attorney's fees for an abuse of discretion. *Benaugh v. Garner,* 876 N.E.2d 344, 347 (Ind.Ct. App.2007), *trans. denied.* The trial court has broad discretion in assessing attorney's fees, and we will reverse only if the award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* An abuse of discretion also occurs if the trial court misapplies the law. *See, e.g., Baxter v. State,* 734 N.E.2d 642, 645 (Ind.Ct.App.2000).

Here, on the issue of attorney's fees, the trial court found and concluded as follows:

9. *[Fackler's] prayer for fees includes costs related to her case filed in the Civil Division of the Allen Superior Court.* The Indiana Supreme Court reversed the trial court's order in that Civil Division case and ruled that it should have been dismissed for lack of jurisdiction [839 N.E.2d 165 (Ind.2005) ]. *[Powell] should not be obligated for fees incurred on issues over which [he] ultimately prevailed. A similar conclusion is not however reached by the Court with regard to [Fackler's] interlocutory appeal. That appeal was brought in the pending dissolution action and was authorized by the trial court. Notwithstanding the denial of the interlocutory appeal, it was a logical extension of the litigation services rendered by counsel in this case.*

10. The Indiana Court of Appeals determined that attorney's fees may only be ordered if the claim is determined to be frivolous, groundless, or without merit; or, if a contractual agreement exists between the parties that provides for the assessment of such costs. Since [Fackler's] claim was found to be meritorious and because [Powell], not [Fack-

ler], had breached the Agreement, there is no basis in law or contract to sustain [Powell's] prayer for fees. Accordingly, the Court's order of December 13, 2007[,] ordering [Fackler to] pay [Powell's] fees was reversed. He is not entitled to a credit against fees ordered for the benefit of [Fackler].

11. Based on the totality of the circumstances, the Court finds that attorney's fees in the sum of $62,284.43 are reasonable.

Appellant's App. at 28–29 (emphases added).

■ On appeal, Fackler maintains that Powell is liable for the full amount of her attorney's fees incurred in this action, which total $105,757.32. Even under a contract, an award of attorney's fees must be reasonable. *Stewart v. TT Commercial One, LLC,* 911 N.E.2d 51, 58 (Ind.Ct.App. 2009), *trans. denied.* The determination of reasonableness of attorney's fees necessitates consideration of all relevant circumstances. *Id.*

■ Here, the parties' Agreement includes an indemnity clause whereby Powell must pay Fackler's attorney's fees. *See Fackler III,* 891 N.E.2d at 1098. And paragraph 9 of the trial court's findings and conclusions reveals that the court considered relevant the fact that Fackler initially pursued this litigation in the wrong court. The court concluded that Powell should not be liable for that portion of Fackler's attorney's fees. Fackler has not shown that the trial court abused its discretion on this point. *See, e.g., Inlow v. Henderson, Daily, Withrow & Devoe,* 804 N.E.2d 833, 842 (Ind.Ct.App.2004) (observing that trial court had discretion to award attorney's fees solely on basis that appellants brought action in wrong forum).

■ We also reject Powell's contention on cross-appeal that he should not have to pay Fackler's attorney's fees incurred as a result of her unsuccessful attempts to file interlocutory appeals in 2006. Powell does not support his contention on this issue with citations to the record on appeal. *See* Ind. Appellate Rule 46(A)(8)(a). Nor does Powell explain the nature of those interlocutory appeals, other than to describe them as a "premature attempt to get the Court of Appeals to hear the merits of the case before the trial court had concluded its disposition of the case[.]" Brief of Appellee at 18. Without citations to the record or further explanation, the issue is waived. Waiver notwithstanding, Powell has not demonstrated that the trial court abused its discretion on this issue.

■ Finally, Powell contends that the trial court abused its discretion when it denied his request for attorney's fees incurred as a result of his jurisdictional challenge to Fackler's initial filing in the wrong court. But this issue was already litigated in *Fackler III* and is unavailable for review under the law of the case doctrine. *See Perry v. Gulf Stream Coach, Inc.,* 871 N.E.2d 1038, 1048 (Ind.Ct.App. 2007) (reiterating that "the decision and rulings made by [a] court [in a prior] . . . appeal settle definitely for the purposes of the litigation, all questions adjudicated[,] and such decision is the 'law of the case' ") (quoting *Daviess–Martin County Rural Tel. Corp. v. Pub. Serv. Comm'n,* 132 Ind. App. 610, 174 N.E.2d 63, 64 (1961)). In *Fackler III,* Fackler challenged the trial court's award of $20,000 in attorney's fees to Powell to compensate him for those fees incurred "related to the summary judgment proceeding and appeal that ultimately determined that the matter should have been filed with the court granting the dissolution of marriage." 891 N.E.2d at 1097–98. We held that Powell was not entitled to attorney's fees and that he was obligated to pay Fackler's attorney's fees

in an amount to be determined by the trial court. *Id.* at 1098. We will not revisit that issue in this appeal.[5]

### Conclusion

The trial court erred when it calculated the prejudgment interest owing to Fackler at a rate of 12% until February 6, 2003, and a rate of 8% thereafter. We remand with instructions for the trial court to apply the 12% prejudgment interest rate to the amount Powell owed Fackler from the date of the dissolution decree, March 22, 2002, until the date of final judgment, June 2, 2009. Fackler is entitled to prejudgment interest for the period of time she pursued the action in the wrong court. The trial court did not abuse its discretion when it ordered Powell to pay Fackler's attorney's fees in the sum of $62,284.43. And the trial court did not abuse its discretion when it denied Powell's request for attorney's fees.

Affirmed in part, reversed in part, and remanded with instructions.

FRIEDLANDER, J., and BRADFORD, J., concur.

---

5. Powell contends that our holding in *Fackler III* "precluded only an award of attorney's fees to Powell under [Indiana Code Section] 34–52–1–1(b) or the terms of the Mediated Settlement Agreement." Brief of Appellee at 15. He maintains that attorney's fees to him "are in fact authorized by [Indiana Code Section] 31–15–10–1[.]" *Id.* But, again, the law of the case doctrine precludes relitigation of this issue, even on the basis of a new theory. Powell had an opportunity to present this argument to our court in the prior appeal.