Jane D. CONNOLLY, Appellant–
Petitioner,

v.

Michael P. CONNOLLY, Appellee–
Respondent.

No. 02A04–1101–DR–4.

Court of Appeals of Indiana.

June 13, 2011.

Kendra G. Gjerdingen, Mallor Grodner LLP, Bloomington, IN, Attorney for Appellant.

Cathleen M. Shrader, Barrett & McNagny LLP, Fort Wayne, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Jane D. Connolly ("Wife") appeals the trial court's judgment in favor of Michael P. Connolly ("Husband"). Wife raises a single issue for our review, which we restate as the following two issues [1]:

1. Whether the trial court misinterpreted the terms of the parties' settlement agreement.

2. Whether the trial court abused its discretion when it ordered Wife to pay a part of Husband's attorney's fees.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On May 13, 2004, Wife filed a petition for the dissolution of her marriage to Husband. On July 12, 2005, Husband and Wife entered into a Settlement Agreement ("the Agreement"). The Agreement [2] contained a possible future equalization payment from Husband to Wife, which was to be made if Husband's ownership interest in Bantry Bay, LLC ("Bantry Bay") increased in value. Bantry Bay owned two commercial real estate properties.[3] The Agreement described the conditions of the possible future equalization payment as follows:

H. *PROPERTY EQUALIZATION PAYMENTS BY HUSBAND TO THE WIFE:*

\* \* \*

2. As additional property equalization between the parties, Husband shall make certain additional pay-

---

1. In light of the language of the parties' agreement and Wife's admissions in her appellate brief, we need not consider Wife's additional argument that the trial court erroneously considered evidence outside the four corners of her agreement with Husband.

2. We note that the Agreement was prepared by Wife's previous counsel and not by Wife's counsel on appeal.

3. It is not disputed that Bantry Bay had no other assets.

ments to Wife relating to *the increase in the fair market value, if any, occurring to the commercial real estate owned by Bantry Bay LLC and Husband's one[-]third ownership interest therein.* Husband and Wife agree that as of May 9, 2004[,] Husband's one[-]third interest in the fair market value of the DuPont Road real estate and buildings equals $825,000 and in the Southgate real estate and building is $466,667.00. With respect to said commercial real estate and buildings, Husband and Wife agree as follows:

A. In the event either or both parcels of real estate is/are sold on or before May 1, 2009, Husband shall forthwith pay to Wife an amount equal to 20% of the amount by which one[-]third of the gross sales price of each parcel exceeds Husband's interest in each parcel as set forth above.

B. In the event either or both of the parcels have not been sold on or before May 1, 2009, the parties agree that each parcel shall be re-appraised by an MAI commercial appraiser to determine the current fair market value of each parcel. The selection of appraiser shall be agreed upon by the parties, and the costs of such appraisals shall be divided equally between the parties. In the event the parties cannot agree upon an appraiser, each party shall commission, at their own expense, an MAI commercial appraiser to appraise the fair market value of the property or properties and the average of these two appraisals for each parcel shall be used. To the extent that one-third (1/3) of the agreed upon appraisal or one-third (1/3) of the average of the two appraisals exceeds Husband's interest as defined above, then Wife shall

receive a sum equal to 20% of such increase. Said amount shall be paid by Husband to Wife in sixty (60) equal monthly installments with interest calculated at 5% per annum. Said payments shall commence the first day of the month following the completion of the appraisal process. There shall be no penalty for pre-payment.

Appellant's App. at 21–22 (emphasis added). The Agreement also provided: "Each party agrees to indemnify and save and hold the other harmless from all damages, losses, expenses (including attorney's fees), costs and other fees incurred by reason of the indemnitor's violation or breach of any of the terms and conditions hereof." *Id.* at 24. On August 1, 2005, the dissolution court incorporated the Agreement into its decree of dissolution of marriage.

It is not disputed that Husband had a one-third ownership interest in Bantry Bay and that Bantry Bay held title to the real properties described in paragraph H of the Agreement. As of May 1, 2009, neither of the two properties had been sold. An agreed-upon appraiser determined the value of the Southgate property to be $680,000. One-third of that amount is $226.666.67, which is a $240,000 decrease from the value stipulated in the Agreement. As provided in the Agreement, both parties obtained their own appraiser to determine the value of the DuPont property. The average value of the two appraisals was $2,940,000. One-third of that amount is $980,000, a $155,000 increase from the value stipulated in the Agreement.

Wife asserted that she was entitled to 20% of the increase in the value of the DuPont property, and Husband asserted that no equalization payment was due since the value of his ownership interest in

Bantry Bay had decreased $85,000 from the stipulated value. On January 12, 2010, Wife filed a motion to compel Husband to pay the equalization payment she claimed and, subsequently, both parties filed for summary judgment on that motion. The court held a hearing on July 9, and, on October 6, the court entered judgment in favor of Husband. The court also ordered Wife to pay $1,500 of Husband's attorney's fees. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Equalization Payment

■■■ Wife first contends that the trial court misinterpreted the Agreement when it concluded that Husband's equalization payment was to be based on the value of his interest in Bantry Bay rather than on the separate value of each of the two properties owned by Bantry Bay. The construction of the terms of a written contract is a pure question of law, which we review de novo. *Bailey v. Mann,* 895 N.E.2d 1215, 1217 (Ind.2008).

> When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. First, we must determine whether the language of the contract is ambiguous. The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. If, on the other hand, a contract is ambiguous, its meaning must be determined by examining extrinsic evidence and its construction is a matter for the fact finder. When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made. We do this by examining the language used in the instrument to express their rights and duties. We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless. We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict.

*Whitaker v. Brunner,* 814 N.E.2d 288, 293–94 (Ind.Ct.App.2004) (citations omitted), *trans. denied.*

Here, both parties claim that the Agreement unambiguously supports their conflicting interpretations. We agree with Husband and the trial court. The Agreement states that Husband "shall make certain additional payments to Wife relating to the increase in the fair market value, if any, occurring to the commercial real estate owned by [Bantry Bay] and Husband's one[-]third ownership therein." Appellant's App. at 21. The meaning of the property equalization payment clause thus turns on the meaning of "Husband's one[-]third ownership interest" in "the commercial real estate owned by [Bantry Bay]." *See id.* at 21.

■■■ While this provision might have been better drafted, nonetheless the parties' intent is clear: in the event of a post-dissolution increase in the value of Husband's ownership interest in Bantry Bay, Wife would be entitled to an "equalization payment[ ]" based upon an increase in the value of that interest. *See id.* at 20–22 (emphases removed). "[I]t is well settled that, unless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement without any statement to that effect." *Van Prooyen Builders, Inc. v. Lambert,* 907 N.E.2d 1032, 1035 (Ind.Ct.App.2009) (quotation omitted), *aff'd on reh'g,* 911 N.E.2d 619, *trans. denied;*

*see also Johnson v. Sprague,* 614 N.E.2d 585, 589 (Ind.Ct.App.1993).

Under Indiana law, "[t]he interest of a member in a limited liability company is personal property." Ind.Code § 23–18–6–2. As discussed above, Husband held a one-third membership interest in Bantry Bay, and Bantry Bay held title to the commercial real estate. Husband does not have a direct ownership interest in the two properties and, therefore, his only interest in them is derivative of his membership interest in the company. The commercial real estate is titled in the company, not in its members, and, as a member of Bantry Bay, Husband does not own a fractional interest in the real estate but owns a personal property interest in the company as a whole.

Thus, when the parties referred in the Agreement to Husband's "ownership interest" in "the commercial real estate owned by [Bantry Bay]," they did so knowing the nature of a limited liability company and the company's relationship with its members under the Indiana business flexibility act, Indiana Code 23–18. *See* Appellant's App. at 21. In other words, Husband's only ownership interest in the real estate is as a member of the Bantry Bay limited liability company. And his membership in the limited liability company is an undivided fractional or percentage interest in the whole company. He has no ownership interest in the commercial real estate owned by Bantry Bay. As such, the Agreement, which is limited by its plain language to Husband's "ownership interest," means his personal property interest as a member of Bantry Bay. The only circumstances under which Husband would owe an equalization payment to Wife would be if the total value of his interest in Bantry Bay had increased. While the value of Husband's interest in Bantry Bay is determined by the fair market value of the two real properties, Husband does not have a separate interest in those properties but only a membership interest in the company.

In sum, Wife's interpretation of the Agreement conflates Husband's ownership interest in Bantry Bay with Bantry Bay's interest in the commercial real estate. Further, her interpretation would mean that she is entitled to an additional property equalization payment for a decrease in the value of Husband's interest, which would be contrary to the plain meaning of the disputed provision. *See id.* Again, it is not disputed that Husband's ownership interest in Bantry Bay decreased. Accordingly, Wife is not entitled to an equalization payment based on Husband's ownership interest.

### Issue Two: Attorney's Fees

Wife also contends that the trial court erred when it ordered her to pay a part of Husband's attorney's fees without first determining her ability to pay those fees. Wife does not dispute that she is contractually obligated to pay at least a part of Husband's fees in this action, nor does she dispute that Indiana Code section 31–15–10–1(a) grants a court the authority to order a party to pay the other party's reasonable attorney's fees. *See Walters v. Walters,* 901 N.E.2d 508, 515 (Ind.Ct.App. 2009). When determining whether to award attorney's fees, a trial court "*must* consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors, which bear on the reasonableness of the award." *Id.* (quoting *Bertholet v. Bertholet,* 725 N.E.2d 487, 501 (Ind.Ct.App.2000)) (emphasis in original). We will review the trial court's award of attorney fees for an abuse of discretion. *Id.* (citing *Mitchell v. Mitchell,* 695 N.E.2d 920, 924 (Ind.1998)). Moreover, a trial court is not required to give reasons for its determination. *Id.* (citing

209

*Schacht v. Schacht,* 892 N.E.2d 1271, 1280 (Ind.Ct.App.2008)).

Here, although the trial court did not express its reasons for its determination that Wife should pay a portion of Husband's fees, it did "take[ ] judicial notice of the prior Findings and Orders entered in this cause." Appellant's App. at 10. Those prior findings and orders incorporated Wife's resources, earning ability, and other factors, such as her personal property settlement from the dissolution of the marriage. And Wife does not suggest that any of those factors significantly changed since the dissolution of the marriage. As such, we cannot say that the trial court abused its discretion when it ordered Wife to pay a portion of Husband's attorney's fees.[4]

Affirmed.

ROBB, C.J., and CRONE, J., concur.

4. We decline Husband's invitation to remand with instructions that the trial court enter a judgment against Wife for a portion of Husband's appellate attorney's fees.