# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**MICHAEL A. SETLAK**
Shilts Law Office
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL H. MICHMERHUIZEN**
Barrett & McNagny LLP
Fort Wayne, Indiana

**CORNELIUS B. HAYES**
Hayes & Hayes
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT A. MASTERS, | ) | |
| | ) | |
| Appellant/Cross-Appellee, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1404-DR-178 |
| | ) | |
| LEAH MASTERS, | ) | |
| | ) | |
| Appellee/Cross-Appellant. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause No. 02D07-1204-DR-261

**October 29, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

In this contentious dissolution action, the parties submitted to arbitration pursuant to the Family Law Arbitration Act, Indiana Code Sections 34-57-5-1 to -13. After several hearings, the arbitrator entered numerous findings of fact and conclusions of law, and the trial court reduced the arbitrator's findings and conclusions to judgment accordingly. See Ind. Code § 34-57-5-7 (2014). In her findings and conclusions, the arbitrator, among other things, dissolved the marriage of Robert A. Masters ("Husband") and Leah Masters ("Wife"); valued and distributed the vast majority of the marital assets; resolved questions of child custody, support, and parenting time; and determined the parties' respective incomes, whether actual or imputed. In particular, the arbitrator found that Husband had an annual income of $80,000; that he must immediately pay $17,735 in back child support; that he must pay to Wife $23,965.05 in cash within 100 days of the arbitrator's order to equalize the parties' marital assets; that he must replenish $51,000 in the parties' bank accounts; and that he should be awarded $93,843 in the valued portion of the marital estate. The arbitrator then ordered Husband to pay $95,000 of Wife's attorney's fees.

On appeal, Husband challenges only the arbitrator's finding that he pay $95,000 of Wife's attorney's fees. We hold that the arbitrator's finding is clearly erroneous because it does not consider Husband's ability to pay Wife's attorney's fees in light of his earnings, living expenses, and valued assets, or in light of the other obligations the arbitrator imposed on Husband. Further, we reject Wife's arguments on cross-appeal as well as each party's request under Appellate Rule 66(E) for appellate attorney's fees.

2

Reversed and remanded with instructions.

## FACTS AND PROCEDURAL HISTORY

After the parties had made several appearances before an arbitrator on the dissolution of their marriage, the arbitrator entered numerous findings of fact and conclusions of law pursuant to Indiana Code Section 34-57-5-7, which the trial court reduced to judgment pursuant to Section 34-57-5-7(d)(1). According to the following relevant and undisputed findings and conclusions:

1.     The parties were married on August 21, 1993.

2.     There has been an irretrievable breakdown of the marriage between Wife and Husband and their marriage should be dissolved.

3.     Wife and Husband are the parents of one child, namely, [E.M.], born on January 22, 2007.

4.     Husband filed a Verified Petition for Dissolution on April 3, 2012.

* * *

7.     On May 18, 2012, Wife filed a Verified Counter-Petition for Dissolution of Marriage.

* * *

1. [sic]  This has been a very contentious divorce.

* * *

20.     The parties do not live in close proximity to one another . . . .  Wife and [E.M.] reside in Allen Park, Michigan, with Wife's mother and father, Paul and Dona Dawson.  Husband resides in Brevard, North Carolina.

* * *

72.     For child support purposes, Husband's income should be [$80,000]. His income should not include any imputed income from his prior employment.

3

73. Expert testimony was provided that Wife would be required to obtain six (6) mandated credits and three (3) readying credits to renew her teaching certificate, which could be completed in one (1)[] or[,] easily, two (2) semesters.

74. Full-time teachers in public schools in Michigan have an annual salary range[] from [$33,000] (rural) to [$48,500] (urban).

75. Other opportunities for Wife's employment utilizing her [existing] college degree are:

a. Para Educator (with Elementary Education degrees pays $11-14 per hour)[.]
b. Public charter school—pays approximately 75% of public school salary.
c. Home bound teacher—contracts at $25.00 per hour (Avondale School District in Detroit, Michigan[,] averaged 30 hours per week).
d. Intermediate school districts—$24,000 to $34,000 per year[.]

76. Allen[] Park, Michigan[,] is an urban school district, but Wife testified that she desires to work at E.M.'s [parochial] school.

77. In 2012, Wife was unemployed, in part[] because she was busy moving and getting E.M. settled in a new school. Minimum wage of [$290] per week[, or $15,080 annually,] is imputed to her for all of 2012.

78. In 2013, Wife could have been employed as a Para Educator; therefore, income of [$450] per week[, or $23,400 annually,] is imputed to her for all of 2013.

79. Commencing January 1, 2014, [$40,000] annual income is imputed to Wife, who could have acquired her Michigan teaching license by this time.

80. Commencing April 3, 2012, until January 1, 2013, Husband shall pay child support of [$180] per week.

81. Commencing January 1, 2013, until January 1, 2014, Husband shall pay child support of [$172] per week.

82. Commencing January 1, 2014, . . . Husband shall pay . . . [$161] per week.

4

\* \* \*

86.    Based upon the aforestated, as of March 14, 2014, Husband is [$17,735] in arrears on his obligation for child support, which sum is to be paid, forthwith.

\* \* \*

90.    It is reasonable to have all future tuition and fee expenses at Inter-City Baptist School [E.M.'s parochial school] shared by Mother and Father in accordance with their respective income percentages (67%/33%) . . . .

\* \* \*

92.    Wife's father shall be reimbursed the tuition expense for [E.M.'s] enrollment at The Inter-City Baptist School during the last two (2) years sixty-seven [percent] (67%) by Husband and thirty-three [percent] (33%) by Wife.

\* \* \*

134.    The following represents the parties' marital estate on the date of filing:

| ASSET | VALUE |
|---|---|

\* \* \*

| | |
|---|---|
| Coins—Gold and Silver (Disputed) | Unknown |
| Coins—Ancient Coins (Disputed) | Unknown |

\* \* \*

| | |
|---|---|
| TOTAL [of valued assets] | $234,607.32 |

\* \* \*

147.    Wife asserts that an auction is the fairest and best way to recognize the highest value for the coins . . . .

148.    It is not clear to the Arbitrator . . . why Husband should be compelled to auction his share of the coins if he does not desire to do so.

* * *

154.    . . . In assessing attorney fees and litigation expenses in a dissolution of marriage proceeding, the trial court should consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such other factors that bear on the reasonableness of the award.  Scott v. State, 668 N.E.2d 691, 709 (Ind. [Ct.] App. 1996).

155.    Evidence revealed that Husband told Wife that she could receive free legal services from the Hyatt Legal Plan, a benefit that Husband received by virtue of his union benefits . . . .

156.    Wife testified that Husband informed her that she could meet with his attorney and such attorney could be her lawyer also.

157.    Husband was subpoenaed to produce the Hyatt Legal Plan which allegedly provided that two (2) parties to a divorce could have two (2) separate attorneys to be paid by the same plan.  No evidence was produced by Husband to support his contention that the Hyatt Legal Plan would provide legal services for Wife.

158.    For a portion of these proceedings, Husband's attorney fees were covered by the Hyatt Legal Plan, as his attorney is a member of such Plan. The Plan provided Husband with an hourly rate of [$100,] which rate is one and one-half (1 ½) times less than the standard rate in the legal community. As such, Husband has benefited greatly from his employment benefit.

* * *

160.    Husband's Attorney Fee Affidavit states that Husband has incurred Attorney Fees in the aggregate sum of [$33,771.50] . . . .   Husband has been billed at [$100] per hour and the first [$12,000] of fees were paid by the Hyatt Legal Plan.

161.  Wife secured independent counsel, C. Neil Hayes, Esq., and has been caused to incur debt with her father for the payment of Mr. Hayes' services.

162.    For each payment made toward Wife's attorney fees such was derived from borrowed monies from Paul and Dona Dawson of Allen Park, Michigan.  All borrowings were secured with a Promissory Note from Wife to Paul and Dona Dawson.

6

163. Wife is one of four children and is expected to repay the money that she borrowed in order to permit fairness to her siblings and her parents as testified [to] by Wife and Paul Dawson . . . . There has been no evidence produced to the contrary.

164. Additionally, Wife borrowed money from her parents . . . to secure the business valuator, Gregory Green. Wife paid the following litigation expenses . . . [which totaled] $5,513.90. Husband equally benefitted from payments made to Gregory Green and Fairfield Rare Coins & Jewelry[, which cost $582.20 and $1350, respectively]. . . .

165. Husband incurred litigation expenses of [$100] to Pegasi Numismatics, [$50] for Recovery Coin Inventory, [$715] for Gregory Green, [and $1,050] for Timbrook Psychological Services.

* * *

170. The joint philosophy of the parties was that Wife would be a stay-at-home Wife and a Mother for [E.M.], a life not contemplating the furthering of her formal education. At the same time, the evidence reveals that the Husband pursued his vocation at Navistar, provided tutorial services for students in math, secured a Graduate Certificate in Statistics and furthered his formal education earning a Master's Degree in Mathematics . . . .

171. Wife has been unemployed outside the household for many years, and she continued [to be] so unemployed during the separation.

172. In this proceeding, both parties have complained that the other's conduct, and lack of cooperation, has caused an increase in the overall expense in this proceeding. The Arbitrator has taken due notice of both of the part[ies'] contentions.

173. The case before the Arbitrator is one of procedural[] complexity and substantive difficulty. A unique issue has arisen due to Husband's 5th Amendment objections and other discovery disputes arising from Husband's relationship with his former employer.

174. The actual ratio of earnings is [100%] Husband and [0%] Wife. Even if income is imputed to Wife, there is a dramatic disparity in the parties' incomes. It is also true that Wife has not earned any income for many years and apparently Husband did not object to this course of conduct.

7

175. Husband has paid nothing of Wife's Attorney Fees and Cost of litigation and had no outstanding debt in relation thereto at the time of Arbitration.

176. The Arbitrator has considered the resources of the parties, the parties' economic condition, the ability of the parties to engage in gainful employment and to earn an adequate income and other such factors that bear on reasonableness of the award.

177. After considering all relevant factors, the Arbitrator finds that the Husband should be ordered to pay [$95,000] of Wife's attorney fees . . . .

178. Wife also incurred cost[s] for which Husband benefitted from as set forth herein. Husband shall reimburse Wife [60%] of the following for which Husband derived direct benefit: [$582] Gregory Green; [$1,350] Fairfield Rare Coins & Jewelry Appraisal; and [$1,800 in the Arbitrator's expenses] within [30] days of the date of this Decree of Dissolution.

179. Wife shall reimburse to Husband [40%] of his litigation expenses [listed in paragraph 165].

* * *

198. Husband owes Wife a cash equalization of [$23,965.05, which] shall be paid before June 30, 2014[, or in about 100 days].

Appellant's App. at 20, 23, 27-29, 34, 36-38, 40.

The arbitrator then distributed marital assets 60% to 40% in Wife's favor, as the arbitrator had done with respect to certain miscellaneous litigation expenses quoted above. Thus, the arbitrator awarded Husband about $93,843 in the valued marital assets. And the arbitrator further directed Husband to "replenish . . . [$51,000] . . . in the parties' bank accounts."[1] Id. at 45. This appeal ensued.

---

[1] There are no findings to suggest that Husband engaged in any misconduct, although the arbitrator did find that each party had been especially litigious.

**Attorney's Fees**

On appeal, Husband challenges the arbitrator's findings and conclusions that he pay $95,000 in Wife's attorney's fees. Pursuant to the Family Law Arbitration Act, an appeal may be taken from the court's judgment on an arbitrator's findings and conclusions "as may be taken after a judgment in a civil action." I.C. § 34-57-5-11. We review the arbitrator's findings and conclusions accordingly.

According to the Indiana Supreme Court, where the judgment on attorney's fees is based on findings and conclusions, "the standard of review under [Indiana Trial Rule] 52(A) . . . applies." Quillen v. Quillen, 671 N.E.2d 98, 103 (Ind. 1996). Trial Rule 52(A)

> prohibits a reviewing court on appeal from setting aside the trial court's judgment "unless clearly erroneous." The court on appeal is further required to give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." When a trial court has made special findings of fact, as it did in this case, its judgment is clearly erroneous only if (i) its findings of fact do not support its conclusions of law or (ii) its conclusions of law do not support its judgment. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference.

Id. at 102 (citation omitted). Findings are also clearly erroneous "if they are insufficient to disclose a valid basis for the legal result reached in judgment," Fumo v. Med. Group of Mich. City, Inc., 590 N.E.2d 1103, 1108 (Ind. Ct. App. 1992), trans. denied, or if they are "facially inconsistent" such that they cannot support the judgment, Ozug v. Ozug, 4 N.E.3d 827, 830-31 (Ind. Ct. App. 2014), trans. denied.

Our supreme court has added:

> where the trial court finding at issue is the award of attorney['s] fees in a dissolution proceeding:

> Trial courts enjoy broad discretion in awarding allowances for attorney['s] fees. . . . Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. . . . In assessing attorney's fees the court may consider such factors as the amount of assets awarded to the parties, the relative earning ability of the parties, and which party initiated the action.

Quillen, 671 N.E.2d at 103 (quoting Selke v. Selke, 600 N.E.2d 100, 102 (Ind. 1992)).

We hold that the arbitrator's findings are clearly erroneous because they do not demonstrate Husband's ability to pay the fee assessed against him. When determining whether to award attorney's fees, the other party's ability to pay is a factor to be considered. See, e.g., Carrasco v. Grubb, 824 N.E.2d 705, 712 (Ind. Ct. App. 2005), trans. denied. But there are no findings here that demonstrate that the arbitrator considered that factor. To the contrary, the arbitrator expressly found that Husband's annual income is $80,000; she directed Husband to pay $17,735 in his child support arrearage "forthwith," Appellant's App. at 29; she directed him to pay $23,965.05 as a cash equalization payment within 100 days of the dissolution order; and she directed him to pay $51,000 to "replenish . . . the parties' bank accounts." Id. at 45. Moreover, the $95,000 award is about $1,000 more than Husband's 40% of the valued portion of the marital estate. If anything, the arbitrator's findings seriously call into doubt Husband's ability to pay another $95,000 to Wife.

In response, Wife asserts that unvalued marital assets, namely, certain coins, demonstrate Husband's ability to pay the fee award. In support of this argument, Wife relies on evidence she submitted to the arbitrator regarding the value of those assets. But, despite that evidence, the arbitrator expressly found that the coins had an "[u]nknown"

value.  Id. at 34.  Moreover, the arbitrator expressly found that Husband should not "be compelled to auction his share of the coins . . . ."  Id. at 35.  As such, we are in no position either to speculate on a value for the coins or to say that the arbitrator meant for Husband to sell or otherwise collateralize them.  And, at best, Wife's evidence regarding the value of the coins would make the arbitrator's findings irrational in that the arbitrator would have found that the coins had an unknown value and then relied on that unknown value to assess fees against Husband.

Neither do the arbitrator's findings regarding Husband's mistaken belief about whether his union agreement would pay for Wife's attorney, or Wife's payment agreement with her parents, which enabled her to obtain the attorney of her choice, inform this court of a basis for the arbitrator's conclusion that Husband should pay Wife's fees.  There are no findings that Husband acted in bad faith or in any way more inappropriately than Wife throughout the dissolution process.  As such, these findings do not support the arbitrator's conclusion.

Finally, in support of the fee award Wife lists a number of things the arbitrator "could" have relied on.  Appellee's Br. at 25-27.  But, while the fact-finder "is not required to give reasons for its determination" on attorney's fees, Connolly v. Connolly, 952 N.E.2d 203, 208 (Ind. Ct. App. 2011), neither is this court obliged to rationalize the judgment or to disregard the actual findings entered.  And it is not this court's place to explain to the fact-finder what the fact-finder should have explained to this court in the first instance.  Here, again, the arbitrator's findings of fact do not demonstrate that Husband had the ability to pay Wife's attorney's fees.

11

Thus, the judgment on this issue is clearly erroneous. The arbitrator's findings of fact do not disclose a valid basis for the legal result reached in that they do not explain whether Husband has the ability to pay Wife's attorney's fees.[2] The court's judgment that Husband pay $95,000 to Wife for her attorney's fees is reversed, and we remand with instructions that the court enter a reasonable award of attorney's fees to Wife in a manner that is not inconsistent with this opinion.

## Cross-Appeal & Appellate Rule 66(E)

Wife raises two arguments on cross-appeal. First, Wife asserts that the arbitrator's findings and conclusions are clearly erroneous because the arbitrator "failed to rule on Husband's Notice of Intent to Relocate and Wife's Motion to Prevent Relocation." Appellee's Br. at 35. In particular, Wife objected to Husband's notice of intent to relocate to North Carolina on the grounds that the notice was defective. Without ruling on Wife's objections, the arbitrator entered findings and conclusions that establish parenting time with Husband in North Carolina. Thus, the arbitrator at least implicitly rejected Wife's objections, and Wife does not assert any other grounds that challenge the arbitrator's findings and conclusions on Husband's living arrangements in North Carolina. Accordingly, Wife's first issue in her cross-appeal is without merit.

Wife also argues on cross-appeal that the arbitrator erroneously "order[ed] the parties to agree upon the means of transportation" for E.M. between parenting times. Id.

---

[2] We need not consider Husband's alternative argument that the $95,000 assessment is unreasonable, but we note that the arbitrator found that a reasonable hourly rate for a local attorney would have been $250. It is not at all clear to this court whether or how the arbitrator used that hourly rate, or any other information, to determine that the award for attorney's fees in this case was a reasonable award. See Gerstbauer v. Styers, 898 N.E.2d 369, 381 (Ind. Ct. App. 2008) ("Our charge is to determine the objective reasonableness of attorneys' fees, which requires an examination of the facts and circumstances that gave rise to the fees.") (citing Ind. Professional Conduct Rule 1.5(a)).

But Wife cites no authority that requires our courts or their officers to micro-manage parents' lives. It is clear from the order that the arbitrator expects the parents to act like adults, figure out reasonable means of transportation, and otherwise act in E.M.'s best interests. If one side is unable to do so, the other side has a remedy through contempt procedures. We will not reverse on this issue.

Finally, we summarily reject each party's request for appellate attorney's fees under Indiana Appellate Rule 66(E). Each party is instructed to pay his or her own appellate attorney's fees. However, we hold that Husband has the right to recover his appellate costs pursuant to Appellate Rule 67(C).[3]

## Conclusion

In sum, the arbitrator's order that Husband pay $95,000 to Wife for her attorney's fees is clearly erroneous. As such, we reverse and remand on that issue. We reject Wife's arguments on cross-appeal as well as each side's request for appellate attorney's fees under Appellate Rule 66(E).

Reversed and remanded with instructions.

BAILEY, J., and PYLE, J., concur.

---

[3] We note that Husband, both as the appellant and as the cross-appellee, has been wholly successful in this appeal. See Ind. Appellate Rule 67(C).