FILED

Apr 12 2018, 5:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Michael A. Setlak
Perry D. Shilts
Shilts & Setlak, LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Michael H. Michmerhuizen
Barrett McNagny, LLP
Fort Wayne, Indiana

Cornelius B. Hayes
Hayes & Hayes
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert A. Masters,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Leah Masters,<br>*Appellee-Respondent.* | April 12, 2018<br><br>Court of Appeals Cause No.<br>02A05-1706-DR-1317<br><br>Appeal from the Allen Superior<br>Court<br><br>The Honorable Charles F. Pratt,<br>Judge<br><br>The Honorable Lori K. Morgan,<br>Magistrate<br><br>Trial Court Cause No. 02D07-1204-<br>DR-261 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Robert Masters (Husband), appeals the trial court's order awarding attorney fees in favor of Appellee-Respondent, Leah Masters (Wife), pursuant to an indemnification clause in the parties' divorce decree.

We affirm.

# ISSUE

Husband presents one issue on appeal, which we restate as: Whether the indemnification clause incorporated in the parties' dissolution decree (Decree) permitted the reimbursement of Wife's appellate attorney fees and costs expended by Wife in her defense to Husband's appeal.

# FACTS AND PROCEDURAL HISTORY

This is Husband's second appeal to this court, and his prior appeal was heard by the supreme court. *See Masters v. Masters*, 20 N.E.3d 158 (Ind. Ct. App. 2014), *trans. granted and opinion vacated by Masters v. Masters*, 43 N.E.3d 570 (Ind. 2015) (respectively, *Masters I* and *Masters II*). The underlying facts, as previously described in *Masters II*, are as follows:

> The parties were married in 1993 and are the parents of one child, a daughter, born in January 2007. Dissolution proceedings began in 2012, and a year later, the parties signed an agreement to arbitrate under the Family Law Arbitration Act (FLAA). *See* Ind. Code § 34-57-5-1 *et seq*. The FLAA permits parties in a dissolution of marriage action to resolve their disputes through arbitration rather than in a trial before a trial judge. The FLAA

details the role and duties of the family law arbitrator in such arbitration.

The family law arbitrator's findings of fact in this case are undisputed. Noting that this had "been a very contentious divorce," . . . the family law arbitrator entered extensive findings of fact regarding the legal and primary physical custody of the parties' daughter, parenting time, child support, parochial school expenses, healthcare expenses for their daughter, dependency exemptions for tax purposes of the husband and the wife, spousal maintenance for the wife, rehabilitative maintenance for the wife, division of marital property, and the allocation of attorney's fees and litigation expenses. The family law arbitrator then entered conclusions of law that in summary provided for: the marriage to be dissolved, sole legal and primary physical custody to be granted to the wife, parenting time to be granted to the husband, the husband to pay certain child support obligations, the wife to receive 60% of the assets and the husband to receive 40% of the assets, the husband to replenish $51,000 in the parties' bank accounts, the wife to be awarded an equalization judgment against the husband for $23,965.05 with an interest rate of 8% until paid in full, the husband to pay certain spousal maintenance costs, the husband to pay $95,000 of the wife's attorney's fees, and the wife to be denied rehabilitative maintenance. The family law arbitrator's decision was submitted to the trial court, which entered judgment thereon in accordance with Indiana Code section 34-57-5-7(d)(1).

*Masters II*, 43 N.E.3d 571-72 (footnotes omitted). Instead of paying Wife's attorney fees and costs as ordered in the Decree, Husband pursued an appeal. *See Masters I*, 20 N.E.3d at 158.

[5] The post-decree activity in this case covers the period between May 2014 and December 2016, whereby the parties filed a total of twenty-nine motions,

petitions, or citations. Following the trial court's entry of the parties' Decree in March of 2014, Wife filed a motion for attachment, seeking to attach Husband's 40% share of assets (including Husband's share of gold, silver and ancient coins) so as to satisfy the $95,000 attorney fees and costs award. Husband thereafter objected to Wife's motion, and he requested that Wife's motion be stayed until his appeal in *Masters I* was resolved. On October 3, 2014, the trial court issued an order providing that "both the [*status quo*] concerning the coins shall be maintained and the Motion to Attach Money Judgment filed by [Wife], shall pend and shall be stayed until such time as the Court of Appeals renders its opinion on the issues presented before it." (Appellant's App. Vol. II, p. 155).

[6] Husband's sole challenge in *Masters I* was that the arbitrator's finding and conclusion requiring him to pay $95,000 of Wife's attorney fees and costs was unsupported by the evidence. *Masters I*, 20 N.E.3d at 159. Each party also requested appellate attorney fees pursuant to Appellate Rule 66(E). *Id.* at 160. As stated, the arbitrator in this case had distributed all of the parties' marital assets at 60%/40% in Wife's favor. *Id.* at 163. In challenging Husband's claim in *Masters I*, Wife argued that the valuation of Husband's 40% share of certain gold, silver, and ancient coins demonstrated Husband's ability to pay the $95,000 attorney fees and costs award. *Id.* at 164. Notwithstanding Wife's argument that the valuation of Husband's 40% share of coins would demonstrate Husband's ability to pay her attorney fees, we found the arbitrator

had rejected Wife's valuation, and had concluded that the value of coins remained "unknown." *Id.* Thus, we held that

> we are in no position either to speculate on a value for the coins or to say that the arbitrator meant for Husband to sell or otherwise collateralize them. And, at best, Wife's evidence regarding the value of the coins would make the arbitrator's findings irrational in that the arbitrator would have found that the coins had an unknown value and then relied on that unknown value to assess fees against Husband.

*Id.* In addition, we noted that although the arbitrator had expressly found that Husband's annual income is $80,000, we determined that the arbitrator's findings raised serious doubts as to Husband's ability to pay Wife's attorney fees. *Id.* Specifically, we noted that the arbitrator had directed Husband to immediately pay $17,735 in child support arrearage; pay Wife a cash payment of $23,965.05 within 100 days of the arbitration award in order to equalize the parties' marital assets; and replenish the parties' bank account with $51,000. *Id.* Accordingly, we found that the $95,000 attorney fees and costs award was more than Husband's 40% valued share of the marital estate. *Id.* Thus, finding that the arbitrator's findings of fact raised grave concerns on Husband's ability to pay Wife's attorney fees, we concluded that the judgment was erroneous and reversed the trial court. *Id.* at 165. Also, we summarily rejected each side's request for appellate attorney fees pursuant to Appellate Rule 66(E). *Id.*

[7] On April 2, 2015, our supreme court granted transfer and ultimately reached a different result by affirming the trial court's award of attorney fees in favor of

Wife. *See Masters II*, 43 N.E.3d at 570. The supreme court stated, in pertinent part:

> The arbitrator's conclusions, findings, and award comprised twenty-seven pages of single-spaced paragraphs extensively addressing various factors. The arbitrator determined the value of the marital estate, its division, and the economic circumstances of each of the parties; the relative education of each of the parties, their job opportunities, and their actual incomes as well as their potential incomes; the behavior of the parties, their level of cooperation in this case, and how attorney's fees were incurred and funded by each of the parties; and various aspects of the education and support of the parties' daughter.

> The husband does not argue that the family law arbitrator made improper findings of fact. Rather, his challenge is directed to the amount of the award as compared to his ability to pay. He also contends that the arbitration award contradicts the arbitrator's own findings, specifically that the arbitrator failed to appropriately consider the wife's potential income and the resulting ratio of the parties' relative incomes; that the wife received $50,000 more than the husband in the property division; that the wife's attorney's fees were paid by the wife's parents and the potential forgiveness of the resulting promissory notes from the wife to her parents; and that the wife's attorney's fees were triple his own and were "undeserved given the results of the case."

> The crux of the husband's argument compares his $95,000 attorney's fee award obligation against his share of the marital estate, "approximately $94,000 . . . plus forty percent of some unvalued coins." In making this claim, the husband relies on the fact that the family law arbitrator did not expressly assign a particular value to the parties' extensive coin collection. To the contrary, we find that the sizeable coin collection and its

disposition is highly relevant to our review. The family law arbitrator recognized the coins in her findings and stated that "[t]hroughout the marriage, Husband invested income earned during the marriage in numismatic and ancient coins . . . believ[ing] that the investment was a good retirement investment strategy." The arbitrator then noted that the wife had hired an appraiser who valued the gold and silver coins at $242,954.55 and that husband had hired an appraiser who valued the ancient coins at $60,635.00. Based on those findings, the family law arbitrator then ordered "that the gold and silver coins be divided by [wife's appraiser] and the [ancient] coins be divided by [husband's appraiser]. . . . Husband shall receive forty percent (40%) of the divided coins and Wife shall receive the remaining sixty percent (60%) thereof." These findings clearly imply that the aggregate value of the gold and silver coins, and the ancient coins, totaled $303,589.55, of which the husband's 40% share would be worth $121,435.82. Combining his coin collection share with the additional admitted $94,000 share of the marital estate, the husband received more than $215,000.

The husband's resulting property share dramatically alters the husband's basic argument. Instead of comparing his obligation to pay $95,000 toward the wife's attorney's fees to a net marital share of $94,000, the fee award must be compared to the husband's receipt of over $215,000 in marital property. This fact renders unavailing all of the husband's arguments. Seen in this light, the arbitrator's attorney fee award is not against the logic and effect of the facts and circumstances of the case. "We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment." Our recalculation of the husband's share of the marital property provides a legal theory supported by the findings, thus warranting our affirmance of the trial court judgment. We conclude that the award of attorney's fees in this case is supported by the findings, and that the husband has failed

to show clear error that leaves us with a definite and firm conviction that a mistake has been made.

*Masters II*, 43 N.E.3d at 576-77 (internal citations omitted).

[8]     On November 13, 2015, twenty-nine days after our supreme court issued its opinion in *Masters II*, Wife filed a motion for indemnification pursuant to the Decree, seeking an assessment of attorney fees and costs that she incurred while defending herself in Husband's appeal. Relying on the indemnity clause which stipulated, in part, that "each party is ORDERED to indemnify the other party from *any violation of the terms and conditions of this Decree*, including costs and reasonable attorney fees," Wife argued that Husband had "violated the terms and conditions of the Decree . . . by choosing not to pay" her attorney fees and costs in the amount $95,000. (Appellant's App. Vol. II, pp.156-57). As such, Wife contended that all her appellate attorney fees and costs that she expended while defending herself in Husband's appeal in *Masters I*, should be recovered from Husband.

[9]     The chronological case summary shows that between December of 2016 and January of 2017, the parties appeared three times in person and by counsel to present evidence on their numerous pending post-dissolution pleadings. On February 23, 2017, while awaiting the trial court's determination of the parties' pending pleadings, Husband filed a verified petition, seeking an order on the distribution of the parties' gold, silver, and ancient coins. Husband also claimed that he had already paid "$107,638.89 via a cashier's check to satisfy

the outstanding attorney fee judgment, which was subject to the Motion for Attachment filed by [Wife] in 2014." (Appellees' App. Vol. II, p. 6).

[10] On May 17, 2017, the trial court issued a seventy-one-page Order, addressing all of the parties' outstanding pleadings. With regards to Wife's motion for indemnification, the trial court entered the following pertinent findings:

> 91. The [divorce decree] . . . ordered the parties to indemnify each other, including from attorney fees, for violations of the [d]ecree. The [c]ourt finds that the clear intent and purpose of the provision was to ensure that one party was not aggrieved by the other party's efforts to avoid or delay compliance with the orders of the [c]ourt.

> 92. [Wife] has incurred substantial attorney fees and thus has been aggrieved by the [a]ppeal pursued by [Husband].

> 93. This Court has the "inherent authority to compensate an aggrieved party." *Crowl v. Berryhill*, 678 N.E.2d 828, 832 (Ind. Ct. App. 1997).

> 94. [Wife] is requesting that the [c]ourt award her attorney fees incurred defending the [a]ppeal initiated by [Husband] and alleges that [Husband] misled the [c]ourt of [a]ppeals regarding the amount of the marital estate that he was awarded thereby alleging that he was incapable of paying the attorney fee award.

> 95. The [c]ourt finds and concludes that the indemnity provision contained in the [d]ecree of [d]issolution of [m]arriage was included in the Decree so as to ensure that any relief provided by the [c]ourt was gross relief and not net relief.

96. [Wife] incurred attorney fees in the sum of Thirty Thousand Eight Hundred Ninety-Six Dollars ($30,896.00) in her defense of the [a]ppeal leaving her net recovery in the sum of Sixty-Four Thousand One Hundred Four Dollars ($64,104.00).

97. [Wife] contends that Indiana law supports a claim for indemnity. [Husband] disagrees with said contention and-maintains that the indemnity provision does not apply. Additionally, he maintains that he was simply pursuing an [a]ppeal which he had a right to do.

98. Indiana law supports a claim for indemnity. In *Fackler v. Powell*, 891 N.E.2d 1091 (Ind. Ct. App. 2008), the dissolution court approved a mediated settlement agreement that became an order of the Court on March 22, 2002. *Id*. [at] 1095. The agreement required Powell to make a payment to Fackler pursuant to that agreement/order. *Id*. [at] 1097. Powell did not do so and Fackler sought enforcement of the [c]ourt's Order as well as attorney fees on appeal pursuant to an indemnification provision. The [c]ourt of [a]ppeals held that because the agreement which became an order of the dissolution court contained an indemnification clause, Fackler was entitled to attorney fees. [*Id.*]

99. In *L.H. Controls, Inc. v. Custom Conveyor, Inc.,* 974 N.E.2d 1031, 1048 (Ind. Ct. App. 2012), the [c]ourt of [a]ppeals held that "it is clear that a divorce decree indemnity provision such as the one in [*Fackler*] would cover a first-party indemnity claim, [*i.e.*] where one party successfully sues the other for breach of contract and requests attorney's fees."

100. The [c]ourt finds that the *Fackler* and *L.H. Controls* cases referenced herein above make it clear that the indemnity provision in a divorce decree covers a first party indemnity claim and permits recovery of attorney fees.

101. The [c]ourt finds that although [Husband] did not violate the indemnity provision of the [d]ecree by pursuing his appellate rights, he did violate the terms of the Decree . . . . by failing to pay the Ninety-Five Thousand Dollar ($95,000.00) attorney fee award as ordered by the [c]ourt.

102. In the *Fackler* case, the [c]ourt of [a]ppeals found that the terms of the Order were violated when a party failed to comply with its provisions. In this case, payment of the attorney fee award was due immediately and payment was not made until after the appeals process was completed and ultimately the [t]rial [c]ourt's award of attorney fees was affirmed. As a result, [Wife] incurred a substantial amount of attorney fees effectively reducing the amount of her attorney fee award. The [c]ourt finds that the purpose of the indemnity provision is to make a party whole.

103. [Husband] maintained during the [evidentiary hearing] that permitting [Wife] to recover [a]ppellate attorney fees under the indemnity provision in the Decree . . . creates a road block to a person's right to seek appellate relief.

104. The Indiana Court of Appeal[s] has held that when a contract that is [the] subject of litigation contains a fee shifting provision, appellate attorney fees are available pursuant to such a provision. *Cavallo v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 1010 (Ind. Ct. App. 2015) ("We have previously held that when a contract provision provided [that] the attorney fees are recoverable, appellate attorney fees may also be awarded."); *Radio Distributing v. National Bank and Trust*, 489 N.E.2d 642, 649 (Ind. Ct. App. 1986). This [c]ourt does not find that an award of appellate attorney fees to a party prevailing on an appeal is a road block to a person's right to appeal.

105. [Husband] argued at [the evidentiary hearing] that [Wife] waived her right to pursue collection on the judgment pre-appeal and that he obtained a stay permitting him to pursue his collection rights. [Wife] acknowledges that she filed a Motion and Affidavit to Attach Property to Money Judgment on April 11, 2014, seeking to attach the coins owned by [Husband] and that the Motion and attempt to attach the coins was stayed, but argues that her agreement to stay the attachment on the coins pending an appeal did not mean that she waived all collection remedies pre-appeal or that she could not recover attorney fees pursuant to the indemnification provision consistent with Indiana case law.

106. The [c]ourt finds that [Wife] did not waive any collection proceedings or her right to enforce the judgment other than as was set forth in the very specific order regarding the coins. However, the [c]ourt finds that even if she had, the fact that collection efforts were stayed does not mean that the judgment itself was stayed, that the judgment did not continue to draw interest or that [Wife] is not entitled to recover attorney fees under the indemnity provisions of the [divorce decree].

(Appellant's App. Vol. II, pp. 63-66). In its conclusion, the trial court granted Wife's motion for indemnification, and ordered "an attorney fee award against [Husband] in favor of [Wife]. [Husband] shall pay attorney fees to [Wife] in the

sum of Seventy-Five Thousand Dollars ($75,000)."[1] (Appellant's App. Vol. II, p. 70).

[11] Husband now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[12] When a trial court enters findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review. *In re Visitation of M.L.B.*, 983 N.E.2d 583, 585 (Ind. 2013). We must first determine whether the evidence supports the findings, and second, whether the findings support the judgment. *K.I. ex rel J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). We will set aside findings of fact and conclusions of law only if they are clearly erroneous, and "'due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.'" *M.S. v. C.S.*, 938 N.E.2d 278, 281-82 (Ind. Ct. App. 2010) (*quoting K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009)). A judgment is clearly erroneous when the record contains no evidence

---

[1] From the trial court's order, it appears that Wife expended $30,896.00 in her defense to Husband's appeal, however, the record is unclear how the trial court came up with the $75,000.00 attorney fee award.

supporting the findings, the findings fail to support the judgment, or when the trial court applies an incorrect legal standard to properly found facts. *Id*. at 282.

### A. Indemnity Clause

[13] The seemingly never-ending post-dissolution litigation in this case has resulted in this second appeal. Today we decide whether the indemnification clause in the parties' Decree permitted Wife to recover attorney fees expended in her defense to Husband's first appeal.

[14] The indemnity clause in this case was worded in a way that violations to any of the orders stipulated in the Decree would allow an aggrieved party to recover reasonable attorney fees and costs expended as a consequence of post-dissolution litigation. Specifically, clause 46 directed:

> 46. In accordance with the findings and conclusions set forth above and herein, *each party is ORDERED to indemnify the other party from any violation of the terms and conditions of this Decree, including costs and reasonable attorney fees.*

(Appellant's App. Vol. II, p. 141) (emphasis added).

[15] Indemnity has been defined as "[t]he right of an injured party to claim reimbursement for its loss, damage or liability from a person who has such a duty." Black's Law Dictionary 784 (8th ed. 2004). The general legal understanding of indemnity clauses is that they cover "'the risk of harm sustained by third persons that might be caused by either the indemnitor or the indemnitee. It shifts the financial burden for the ultimate payment of damages

from the indemnitee to the indemnitor.'" *L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974 N.E.2d 1031, 1047 (Ind. Ct. App. 2012) (quoting *Indianapolis City Market Corp. v. MAV, Inc.*, 915 N.E.2d 1013, 1023 (Ind. Ct. App. 2009)). As we noted in *L.H. Controls*, other authorities recognize this general understanding. *L.H. Controls, Inc.*,974 N.E.2d at 1047-48 (citing Am.Jur.2d 415, Indemnity § 1 (2005) ("In general, indemnity is a form of compensation in which a first party is liable to pay a second party for a loss or damage the second party incurs to a third party."); C.J.S. 94, Indemnity § 1 (2007) ("In a contract of indemnity, the indemnitor, for a consideration, promises to indemnify and save harmless indemnitee against liability of indemnitee to a third person or against loss resulting from such liability.")). That said, we note that there is no absolute prohibition against one party agreeing to indemnify the other party for first-party claims arising between those parties. *Id*. Where the plain language of the provision requires first-party indemnification, then such indemnification is permitted. *Sequa Coatings Corp. v. N. Ind. Commuter Transp. Dist.*, 796 N.E.2d 1216, 1229 (Ind. Ct. App. 2003). Further, we note that an "obligation to indemnify does not arise until the party seeking indemnity suffers loss or incurs damages. This may occur when the party seeking indemnity 1) pays the underlying claim; 2) pays judgment on the underlying claim; or 3) tenders payment in settlement of the underlying claim." *Essex Group, Inc. v. Nill*, 594 N.E.2d 503, 507 (Ind. Ct. App. 1992).

[16] Following our holding in *Masters I* that each party should bear their own appellate attorney fees, Wife paid her fees. In her motion for indemnification,

Wife contended that Husband's appeal in *Masters I* was an attempt by Husband "to avoid paying" Wife's attorney fees and costs in the amount of $95,000 as ordered in the Decree. (Appellant's App. Vol. II, p. 157). Wife therefore claimed that Husband had "violated the terms and conditions of the Decree" by failing to immediately pay her attorney fees and costs. (Appellant's App. Vol. II, p. 157). Accordingly, Wife maintained that all of her appellate attorney fees and costs incurred while defending herself in *Masters I*, should be recovered from Husband pursuant to the indemnity clause.

[17] In granting Wife's motion for indemnification, the trial court found that the Decree ordered the parties to indemnify each other, including reasonable attorney fees and costs, for any violations of the terms and conditions of the Decree. The trial court also found that the indemnity clause had a clear intent and the purpose of the provision was to ensure that one party was not aggrieved by the other party's efforts to avoid or delay compliance with the orders of the Decree. The trial court ultimately found that Wife had incurred substantial attorney fees during her defense in Husband's appeal and thus had been aggrieved with Husband's non-compliance with the Decree.

[18] Husband claims that the when we denied each of the parties' request for appellate attorney fees in *Masters I*, which the supreme court summarily affirmed in *Master II*, both parties were barred from the recovery of any appellate attorney fees. In his brief, Husband now argues that the Wife's motion for indemnification is a "blatant backdoor effort to obtain relief already addressed and denied by our Appellate Court." (Appellant's Br. p. 10).

Accordingly, Husband argues that given the clear language in the holdings in *Masters I and Masters II*, we should vacate the trial court's award of appellate attorney fees in favor of Wife's motion for indemnification. We disagree. The reimbursement of attorney fees pursuant to Appellate Rule 66(E), and recovery of attorney fees pursuant to an indemnity clause follow two separate legal channels.

[19] Appellate Rule 66(E) provides in pertinent part that this court "may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to impose damages is limited to instances when "an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003).

[20] Indiana courts have recognized that indemnity agreements are a form of contract and, as such, are construed according to the rules and principles of the law of contracts. *See TLB Plastics Corp. v. Procter & Gamble Paper Prods. Co.*, 542 N.E.2d 1373, 1377 (Ind. Ct. App. 1989); *Kruse Classic Auction v. Aetna Cas. and Sur.*, 511 N.E.2d 326, 328 (Ind. Ct. App. 1987); *Bell v. Commonwealth Land Title Ins. Co.,* Inc., 494 N.E.2d 997, 999 (Ind. Ct. App. 1986). If the words of the indemnity agreement are clear and unambiguous, they are to be given their plain and ordinary meaning. *See Bell*, 494 N.E.2d at 999.

[21] In this case, the parties contracted to arbitrate their divorce. The arbitrator consequently included an indemnity clause that would make an aggrieved party

whole with regard to attorney fees and costs incurred as a result of post-dissolution litigation arising from violations relating to the Decree. Because the recovery of appellate attorney fees under the indemnification clause follows a separate legal route from attorney fees recoverable under Rule 66(E), the denial of attorney fees in *Masters I, and II*, is irrelevant in discussing whether it was proper for the trial court to grant Wife's motion for indemnification.

[22] Turning to Husband's main argument, he maintains that the order in the parties' Decree requiring him to pay $95,000 in attorney fees and litigation costs in favor of Wife *cannot be interpreted as a term or condition*; therefore, he argues that he did not violate the Decree by pursuing an appeal and failing to immediately pay the judgment debt. On the contrary, Wife argues that "any enforceable provision or obligation" in the Decree was "a term." (Appellees' Br. p. 27) (internal citations omitted). Wife contends that because the directive requiring Husband to pay attorney fees was effective immediately after it was issued, Husband violated a term and condition of the Decree, thereby triggering the enforcement of the indemnity clause.

[23] "Term" is defined as a "an expression that has a fixed meaning in some field." Black's Law Dictionary 1509 (8th ed. 2004). "Condition" is defined as "[a] future and uncertain event on which the existence or extent of an obligation or liability depends; an uncertain act or event that triggers or negates a duty to render a promised performance." Black's Law Dictionary 313 (8th ed. 2004). Our supreme court has held that "'indemnification clauses are strictly construed and the intent to indemnify must be stated in clear and unequivocal terms.'"

*L.H.*, 974 N.E.2d at 1047 (*quoting Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132 (Ind. 1995)). Indemnity agreements are subject to the standard rules and principles of contract construction. *L.H. Controls*, 974 N.E.2d at 1047. Interpretation of a written contract, including an indemnity provision, is a question of law. *Id*. We review questions of law *de novo* and owe no deference to the trial court's legal conclusions." *Koppin v. Strode*, 761 N.E.2d 455, 461 (Ind. Ct. App. 2002).

[24] The arbitration award refers to the orders it issued to the parties as "terms and conditions." (Appellant's App. Vol. II, p. 157). As such, we determine that the order requiring Husband to pay Wife's attorney fees and costs in the amount of $95,000, was a specific term and condition of the Decree. Contrary to Husband's arguments, non-compliance with that directive was a violation.

[25] Husband additionally argues that the indemnity clause at issue here was imposed by the arbitrator and was not an agreed upon clause that the parties intended to be included in the Decree. We note that arbitration arises through contract, and the parties are essentially free to define for themselves what questions may be arbitrated, remedies the arbitrator may afford, and the extent to which a decision must conform to the general principles of law. *School City of East Chicago v. East Chicago Fed'n of Teachers, Local No. 511*, 422 N.E.2d 656, 662 (Ind. Ct. App. 1981). The facts in *Masters II* reveal that via agreement, the parties agreed to arbitrate, however, that agreement was not included in this appeal. Accordingly, Husband's waives his argument that the arbitrator imposed the indemnity clause rather than it being a mutual clause. *See Dickes v.*

*Felger*, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."); Ind. Appellate Rule 46(A)(8)(a). Notwithstanding Husband's omission to include the arbitration agreement, our reading of the Decree reveals that through a series of six hearings, the parties arbitrated, and the arbitrator resolved, issues including legal and primary physical custody, parenting time, child support, parochial school expenses, health care, tax exemption, spousal maintenance, rehabilitative maintenance, division of marital estate, attorney fees, and litigation costs. The arbitrator also included an indemnity clause to vindicate collection rights of attorney fees and costs exhausted by an aggrieved party in the event the other party failed to adhere with the directives of the Decree. Husband was ordered to pay Wife's attorney fees and costs relating to the arbitration.

[26]     Husband then posits that the issue of whether an indemnity provision may permit recovery of appellate attorney fees expended by judgment creditor (Wife) while defending an appeal initiated by a judgment debtor (Husband) has never been addressed by this court and is an issue of first impression. Wife refutes that this is not a case of first impression and she claims that we addressed a similar issue in *Fackler v. Powell*, 891 N.E.2d 1091 (Ind. Ct. App. 2008).

[27]     In *Fackler*, the parties took part in a mediation in the final settlement of their divorce action, resulting in an agreement. *Id*. at 1094. The dissolution court approved the agreement and entered it as part of the final decree. *Id*. The

agreement assigned to the ex-wife a promissory note in the amount of $23,000 plus other costs up to $80,000. *Id*. Ex-husband was required to guarantee payment of the note from the conveyance of "Lot 22." *Id*. Prior to the sale of Lot 22, ex-husband then notified his ex-wife that upon sale of the lot, he would only pay ex-wife $23,000 plus accrued interest at 8%. *Id*. Displeased with ex-husband's intentions, ex-wife brought an action seeking legal and equitable title to the note and she sought the remaining balance on the note upon the sale of the lot. *Id*. Lot 22 was subsequently conveyed for a gross selling price of $114,900. *Id*. at 1095. On the same day the lot was sold, ex-husband paid ex-wife $23,000 plus accrued interest in the amount of $179.40. *Id*. The balance, $83,785.44, was thereafter placed in an escrow account. *Id*. Ex-wife subsequently filed a motion for summary judgment alleging that she was entitled to judgment as a matter of law because the settlement agreement clearly and unambiguously awarded full ownership of the promissory note to her. *Id*. Ex-husband, in turn, filed a motion for summary judgment of his own, asserting that he was entitled to judgment because the trial court did not have subject matter jurisdiction or, in the alterative, because the settlement agreement clearly and unambiguously awarded only $23,000 to ex-wife, leaving him the owner of the promissory note. *Id*. Following a hearing, the trial court denied both of the parties' summary judgment motions. *Id*. Ex-wife filed a motion for certification of interlocutory appeal; it was ultimately granted by the trial court, and we accepted jurisdiction thereafter. *Id*. We vacated on jurisdiction grounds, and on transfer, the supreme court determined that ex-wife should have filed her claim in the dissolution court which retained jurisdiction to

interpret and enforce their marital settlement agreement. *Id.* Ex-wife then refiled her claim in the dissolution court. *Id.* A hearing was conducted, and the trial court entered its findings of fact and conclusions of law determining that ex-wife's only contractual right was $23,000 from the promissory note, and it further ordered ex-wife to pay ex-husband's attorney fees. *Id.* Ex-wife appealed. *Id.*

[28] In her second appeal, ex-wife raised two issues. In her first claim, ex-wife argued that the settlement agreement unambiguously awarded her full ownership of the promissory note. *Id.* On this issue, we determined that ex-husband had breached the provisions of settlement agreement requiring him to pay $23,000 plus other costs up to $80,000, upon sale of Lot 22. *Id.* Accordingly, we found that ex-husband was obligated to pay Wife $103, 000— *i.e.*, $23,000 plus other costs up to $80,000. *Id.* at 1097. Ex-wife's second argument was that trial court's order requiring her to pay ex-husband's attorney fees was contrary to the law. *Id.* While initially noting that Indiana adheres to the "American Rule" with respect to the payment of attorney's fees, *i.e.*, each party is required to pay their own attorney fees, we found that the rule was inapplicable because the parties' settlement agreement contained an indemnification clause relating to payment of attorney fees. *Id.* The indemnity clause specifically provided:

> Each party agrees to indemnify and save and hold the other harmless from all damages, losses, expenses (including attorney's fees), costs and other fees incurred by reason of the indemnitor's violation or breach of any of the terms and conditions hereof.

*Id.* at 1098. Because we determined that ex-husband had breached the settlement agreement in ex-wife's first issue, *i.e.*, Husband was required to pay Wife $103,000 from the proceeds from the sale of Lot 22, and considering the indemnity clause, we reversed and remanded to the trial court for a determination of attorney fees in favor of Wife. *Id.*

[29] Arguing that *Fackler* is inapplicable and inapposite to the facts of this case, Husband claims that the ex-wife in *Fackler* sued her ex-husband for breaching the settlement agreement and for the non-payment of a fixed money judgment. Specifically, Husband argues that, in the instant case, "Wife did not successfully sue Husband for breach of contract, Wife merely defended Husband's appellate effort to have this Court review whether the Ninety-Five Thousand Dollars ($95,000.00) attorney fee award was clearly erroneous or not." (Appellant's Br. p. 21) (internal quotation marks omitted). In response, Wife argues that the *Fackler* holding "could not be more clear [*sic*] that it was a breach that provided the right to recover attorney[] fees under the indemnification provision." (Appellees' Br. p. 30). As such, Wife maintains that Husband's refusal to immediately pay her attorney fees and costs when ordered, was a breach to the terms and conditions of the Decree.

[30] Considering the holding in *Fackler*, we hold that no new ground is being broken with respect to the application of an indemnity clause requiring a party to pay attorney fees expended by another party. In our view, the rationale espoused in *Fackler* controls our outcome. In *Fackler*, we held that the ex-husband was required to pay his ex-wife's attorney fees after his breach of a dissolution

property settlement agreement, which agreement stated that each party agreed "to indemnify and save and hold the other harmless from all . . . expenses (including attorney's fees) . . . incurred by reason of the indemnitor's violation or breach of any of the terms and conditions hereof." *Fackler*, 891 N.E.2d at 1098. In this case, the triggering event requiring Husband to indemnify Wife's post-dissolution attorney fees and costs was when Husband failed to immediately pay Wife's attorney fees and costs as directed in the Decree. Based on our determination that Husband in this case violated the Decree by failing to immediately pay Wife's attorney fees and costs in the amount of $95,000, the indemnity clause was triggered when Wife defended herself in Husband's appeal, thereby incurring post-dissolution attorney fees and costs. As such, we conclude that the trial court did not err in granting Wife's motion for indemnification.

## CONCLUSION

[31] In light of the foregoing, we conclude that the trial court did not err in granting Wife's post-dissolution attorney fees and costs pursuant to an indemnification clause in the parties' divorce Decree.

[32] Affirmed

[33] Robb, J. and Pyle, J. concur